**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                   Elisabeth A. Shumaker
Clerk                                                                        Chief Deputy Clerk

November 3, 2000


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   98-3361, USA v. Becker
          Filed on October 31, 2000


The court's slip opinion, issued on October 31, 2000, omitted a concurrence written by Judge Baldock. The court's corrected opinion, with the concurrence, is attached.

Sincerely,

Patrick Fisher, Clerk of Court


By:   Jeanne Leal
      Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**OCT 31 2000**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LESLEY LEE BECKER, also known
as James Lee Becker, also known as
James Allen, also known as (nfn) Lee,

      Defendant - Appellant.

No. 98-3361

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 97-CR-40101)**

---

Melody Evans, Assistant Federal Public Defender for the District of Kansas
(David J. Phillips, Federal Public Defender, with her on the briefs), Topeka,
Kansas, for the appellant.

Gregory G. Hough, Assistant United States Attorney (Jackie N. Williams, United
States Attorney, with him on the brief), Topeka, Kansas, for the appellee.

---

Before **BALDOCK**, **HENRY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Appealing from both his conviction after trial and his sentence for various drug and firearms charges, defendant-appellant Lesley Lee Becker asserts as grounds for relief several evidentiary errors, insufficient evidence to support his methamphetamine-related convictions, and error in his sentencing. The principal assertions require us to further analyze two developing areas of law: the protection afforded by the Sixth Amendment Confrontation Clause against the admission of out-of-court statements of a non-testifying confidential informant offered to show why police sought a search warrant; and whether a prior search and subsequent drug convictions constituted inadmissible evidence of prior bad acts. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we conclude that although hearsay testimony and evidence of prior bad acts should not have been admitted, any errors were harmless and we therefore affirm Becker's conviction and sentence.

**I**

On March 31, 1997, police searched Becker's residence pursuant to a warrant. During the search, police seized glassware, chemicals, a chemical company brochure, and other manufacturing materials consistent with the production of methamphetamine. Although methamphetamine was not discovered at the residence, methamphetamine residue was detected in a bottle, a zip-lock

bag, and a mixing bowl. The police also seized two recipes for methamphetamine production, marijuana, numerous guns, and ammunition.

As a result of the evidence obtained during the search, Becker was indicted on five counts: (1) attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; (2) managing and controlling a dwelling for the purpose of unlawfully manufacturing and storing methamphetamine in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2; (3) possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (4) possessing acetone with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (5) possessing firearms in and affecting commerce as a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). A jury found Becker guilty on all counts. The district court sentenced him to concurrent sentences of 262 months imprisonment on Count 1, 240 months imprisonment on Counts 2 and 4, and 120 months imprisonment on Counts 3 and 5.

On appeal, Becker argues that hearsay from a confidential informant, profile evidence of a methamphetamine cook, and prior bad acts were erroneously admitted into evidence. Specifically, the jury heard from Officer Bruce Voigt, who testified that an unidentified, non-testifying confidential informant told him that Becker was selling methamphetamine and manufacturing hash oil and that

this informant provided "true and reliable" information. (III R. at 196.) Becker objected to this testimony as hearsay and a violation of the Confrontation Clause. His motion in limine and contemporaneous objections were overruled. The jury also heard testimony from Agent Tom Walsh who, based on his training and experience, described the characteristics of a methamphetamine cook. Although Becker did not object to this evidence at trial, he now asserts it constitutes inadmissible profile evidence. As to prior bad acts, the district court overruled Becker's objection and admitted, pursuant to Fed. R. Evid. 404(b), evidence of Becker's prior convictions for conspiracy to possess methamphetamine and for failure to pay a drug tax, as well as evidence of a prior raid on his home during which police recovered items allegedly consistent with methamphetamine manufacturing.

In addition to these evidentiary claims, Becker argues the evidence was insufficient to support his methamphetamine-related convictions. As to his sentencing, he contends the district court's determination of drug quantity was erroneous. The district court rejected Becker's objections and adopted the findings and recommendations of the presentence report, concluding that Becker's methamphetamine lab capability, as it pertains to Count 1, was six pounds based on the amount of muriatic acid seized from his residence.

**II**

We review for abuse of discretion the district court's evidentiary rulings, considering the record as a whole.[1] See United States v. Jones, 44 F.3d 860, 873 (10th Cir. 1995). Becker argues the district court abused its discretion when it admitted incriminating out-of-court statements by a non-testifying confidential informant, introduced through Officer Voigt's testimony, because the statements at issue were hearsay and violated the Confrontation Clause of the Sixth Amendment.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). Testimony which is not offered to prove the truth of an out-of-court statement, but is offered instead for relevant context or background, is not considered hearsay. See United States v. Wilson, 107 F.3d 774, 781 (10th Cir. 1997); United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987). "[O]ut-of-court statements by informants offered to explain the background of an investigation . . . must be evaluated under . . . Fed. R. Evid. [] 401 and 403 for relevance and to prevent confusion or prejudice." Freeman, 816 F.2d at 563 (citing United States v. Mancillas, 580 F.2d 1301, 1309-10 (7th Cir. 1978)). On hearsay issues, we accord heightened deference to the district court

---

[1] The government argued in its brief that the standard of review here is plain error because Becker failed to object to the evidence at trial, but conceded at oral argument that Becker did indeed object to the admission of this testimony.

"because the determination of whether certain evidence is hearsay rests heavily

upon the facts of the particular case." Wilson, 107 F.3d at 780.

The following testimony of Officer Voigt was elicited during government

questioning:

> Q: [W]hat information did the confidential informant give you that caused you to believe that there was something criminal at the Defendant's residence?
>> [DEFENSE COUNSEL]: Judge, we would raise our objection as previously mentioned for the record.
>> THE COURT: Overruled.
>
> Q: . . . Why did you– what information did the [confidential informant] give you that caused you to seek the search warrant?
>
> A: The informant told me that Becker was selling methamphetamine and was manufacturing hash oil. The informant also advised me that there were chemicals in one of the bedrooms which might be involved in a methamphetamine lab. The informant had never actually observed Becker manufacturing methamphetamine, though.
>
> . . . .
>
> Q: What time period had the confidential informant been at the Becker residence?
>
> A: For approximately two months prior to the execution of the search warrant.
>
> Q: And when was the latest time prior to your application for the search warrant?
>
> A: It would have been within 48 hours of March 28th.

(III R. at 197, 199). The government contends the statement was offered to show

why Officer Voigt applied for the search warrant.

> In United States v. Cass, 127 F.3d 1218 (10th Cir. 1997), we held that
>
> an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene and should be allowed some explanation of his or her presence and conduct.

-6-

> However, testimony that the officer acted "upon information received," or words to that effect, should be sufficient.

Id. at 1223 (quoting 2 McCormick on Evidence (4th ed.) § 249, at 104 (citations omitted)). "The government's identification of a relevant non-hearsay use for such evidence, however, is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice." Id. (quoting United States v. Forrester, 60 F.3d 52, 59 (2d Cir. 1995) (internal quotation omitted)).

Here, as in Cass, "the hearsay problem is exacerbated because the evidence the government presented to 'explain the course of its investigation' . . . go[es] to precisely the issue the government was required to prove." Id. Furthermore, the government bolstered the informant's credibility and invoked the informant's statements for the truth of the matter asserted. In opening arguments, the government stated that "the confidential informant's reliability had been proven to Officer Voigt." (III R. at 175.) In closing arguments, the government referred to the out-of-court statements to support its theory of the case: "We know that at least 48 hours prior to the search warrant application on March the 28th, there was methamphetamine in the Defendant's residence." (VI R. at 540.) The evidence directly implicates the issue of guilt and the government clearly relied on the informant's statements as truthful. We conclude that such evidence was

-7-

used for more than the "limited" purpose allowed by <u>Freeman</u>, 816 F2d at 563,

and its admission constitutes an abuse of discretion.  <u>See</u> <u>Cass</u>, 127 F.3d at 1224.

Although the Confrontation Clause "does not embrace all of the limitations

of the federal hearsay evidentiary rule," <u>United States v. Perez</u>, 493 F.2d 1339,

1342 n.3 (10th Cir. 1974) (citations omitted), we also conclude the admission of

Officer Voigt's testimony concerning the statements of the informant violated that

constitutional guarantee.  Because this is a constitutional claim, we review de

novo the district court's determination that admission of the evidence did not

violate the Confrontation Clause.  <u>See</u> <u>United States v. Rith</u>, 164 F.3d 1323, 1334

(10th Cir.), <u>cert. denied</u>, 120 S. Ct. 78 (1999).

In <u>Ohio v. Roberts</u>, 448 U.S. 56, 66 (1980), the Supreme Court analyzed the

relationship between the Confrontation Clause and the hearsay rules of evidence

and established the following general approach: "[W]hen a hearsay declarant is

not present for cross-examination at trial . . . his statement is admissible only if it

bears adequate 'indicia of reliability.'"[2]  "Out-of-court testimony satisfies the

---

[2]  The Supreme Court also held in <u>Roberts</u>, 448 U.S. at 66, that "the Confrontation Clause . . . requires a showing that [a hearsay declarant] is unavailable."  The Court later modified the unavailability requirement in <u>White v. Illinois</u>, 502 U.S. 346, 354-55 (1992):  "[U]navailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding. . . .  Many declarants will be subpoenaed by the prosecution or defense, regardless of any Confrontation Clause requirement."  Thus, the right of confrontation is not denied
(continued...)

requirements of the Sixth Amendment if it constitutes a 'firmly rooted hearsay exception' or demonstrates particularized guarantees of trustworthiness." Rith, 164 F.3d at 1335 (quoting White v. Illinois, 502 U.S. 346, 356-57 & n.8 (1992)). Because we hold that this testimony is inadmissible hearsay, we must determine whether the statements of the confidential informant are sufficiently trustworthy. See id.

Trustworthiness is dependent on the totality of the circumstances. See id.; see also Idaho v. Wright, 497 U.S. 805, 819 (1990). "Though 'courts have considerable leeway in their consideration of appropriate factors,' the relevant circumstances are those 'that surround the making of the statement and that render the declarant particularly worthy of belief,' such that 'the test of cross-examination would be of marginal utility.'" Rith, 164 F.3d at 1335 (quoting

_____

[2](...continued)
by the failure of the government to call the out-of-court declarant as a witness "when the defendant neglected to exercise rights that would have enabled" confrontation of the witnesses. Rith, 164 F.3d at 1335 (citing United States v. Jackson, 88 F.3d 845, 847 n.2 (10th Cir. 1996)) (further citations omitted); see also United States v. Green, 178 F.3d 1099, 1109 (10th Cir. 1999) (rejecting a Confrontation Clause challenge because the defendant did not call the non-testifying witness). Becker does not assert that the government or the court denied him the opportunity to identify, subpoena, and call as a witness the confidential informant. See Green, 178 F.3d at 1109. Accordingly, the Confrontation Clause does not require the government to show the informant's unavailability.

Wright, 497 U.S. at 819-22).  There is no mechanical test for determining reliability.  See id. at 1335-36 n.12.

A totality of the circumstances analysis of the out-of-court statements does not reveal any particularized indicia of reliability.  The statements were not under oath and were not subject to cross-examination or other scrutiny.  See Perez, 493 F.2d at 1342.  While Officer Voigt testified that he found "[t]he informant's information . . . to be true and reliable," (III R. at 196), the jury had no basis, such as an oath or cross-examination, to independently evaluate the informant's reliability.  We conclude the admission of the informant's statements violated Becker's Sixth Amendment rights.

Even where an error of constitutional magnitude is found, we must inquire as to whether the error is harmless.  See Chapman v. California, 386 U.S. 18, 22 (1967); see also Fed. R. Crim. P. 52(a).  Such an error is harmless if "the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the [improperly admitted evidence] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the [evidence] was harmless error."  Schneble v. Florida, 405 U.S. 427, 430 (1972).  We review the context in which the statement was admitted, how it was used at trial, and how it compares to the properly admitted evidence.  See, e.g., Bond v. Oklahoma, 546 F.2d 1369, 1376 (10th Cir. 1976).

In addition to the trial court's limiting instruction to the jury charging it to disregard the statement's content and consider it only as support for the search warrant, Officer Voigt explicitly stated that the informant never observed Becker manufacturing methamphetamine. Moreover, given the wealth of evidence presented by the government of the chemicals and materials consistent with methamphetamine manufacturing that were seized from Becker's residence, and the utter implausibility of Becker's proffered alternative explanation of their presence, we are satisfied that the error is harmless beyond a reasonable doubt.

**III**

We review the admission of evidence that the defendant fit the profile of a methamphetamine cook for plain error because Becker did not object to the testimony. See Fed. R. Crim. P. 52(b); United States v. Enjady, 134 F.3d 1427, 1435 (10th Cir. 1998). "'Plain errors' are those which are obvious and substantial, and which when viewed in light of the entire record seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Nall, 949 F.2d 301, 309 (10th Cir. 1991) (citing United States v. Young, 470 U.S. 1, 15-16 (1984); United States v. Granville, 716 F.2d 819, 821 (11th Cir. 1983)).

"Courts have condemned the use of profiles as substantive evidence of guilt." United States v. McDonald, 933 F.2d 1519, 1521 (10th Cir. 1991). Rather

than focusing the inquiry upon defining and classifying evidence into categories of profile or non-profile, however, we have held that the better approach is to commence the inquiry with an examination of the applicable rules of evidence. See id. at 1522. Federal Rule of Evidence 702 instructs us to admit specialized knowledge if it will "assist the trier of fact to understand the evidence." That Rule "dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." McDonald, 933 F.2d at 1522.

Tools of the trade may necessitate the appearance of an expert witness if the jury could not understand the significance of possession of those items. See United States v. Robinson, 978 F.2d 1554, 1563 (10th Cir. 1992). We have upheld the admission of expert testimony detailing the significance of "a drug dealer's tools of [the] trade: a single-edge razor blade, a pager or beeper, and a loaded pistol," McDonald, 933 F.2d at 1522, as well as the admission of expert testimony to "explain[] the meaning of the physical evidence" officers "found at the arrest scene . . . where the narcotics were confiscated," Robinson, 978 F.2d at 1564; see also United States v. Martinez, 938 F.2d 1078, 1083 (10th Cir. 1991) (upholding the admission of testimony regarding the possession of guns and scales as "tools of the trade—that is, means for the distribution of illegal drugs"); United States v. Young, 745 F.2d 733, 761 (2d Cir. 1984) (upholding the

admission of expert testimony "to explain physical evidence [of heroin manufacturing paraphernalia] that was in the case").

Becker contests the admission of testimony by Agent Walsh, including testimony describing the skills needed (or not needed) to be a methamphetamine cook, how many recipes cooks generally have in their home, and that cooks are gaunt and paranoid due to the effect of the chemicals on their nervous systems, are generally methamphetamine users, are violent, seek secluded locations due to the odor cooking produces, and only trust experienced cooks with their equipment.

The significance of at least the location of Becker's residence, the recipes, and the weapons would not necessarily be obvious without specialized testimony. Considering the fine line between potentially improper profile evidence and acceptable specialized testimony explaining the significance of physical evidence, we cannot conclude that there was error so "obvious and substantial [that] when viewed in light of the entire record [it] seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Nall, 949 F.2d at 309.

**IV**

We review for abuse of discretion the district court's decision to admit pursuant to Fed. R. Evid. 404(b) evidence of Becker's prior adjudication as a drug

dealer and other bad acts. See United States v. Lazcano-Villalobos, 175 F.3d 838, 846 (10th Cir. 1999). Rule 404(b) states, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence is properly admitted under Rule 404(b) if four requirements are met: (1) the evidence was offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instructed the jury pursuant to Fed. R. Evid. 105 to consider the evidence only for the purpose for which it was admitted. See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).

Becker claims that three prior acts were admitted in error: (1) a prior felony conviction for conspiracy to possess methamphetamine; (2) a prior felony conviction for "Drug Dealer's Failure to Pay Kansas Drug Tax" (I Supp. R. Ex. 91 at 2); and (3) a prior search of Becker's residence, which produced methamphetamine trafficking paraphernalia. He argues this evidence impermissibly established his propensity to commit the crimes charged and objects on the grounds of irrelevance and prejudice.

We find the first factor of the Huddleston analysis satisfied because the evidence was introduced for the proper purpose of using "prior drug involvement to show plan, motive or intent in a drug trafficking offense." United States v. Sturmoski, 971 F.2d 452, 459 (10th Cir. 1992). The government sought admission of the evidence to show motive and intent.

As for the second Huddleston factor—relevance—we have "noted that prior narcotics involvement is relevant when that conduct is 'close in time, highly probative, and similar to the activity with which the defendant is charged.'" Wilson, 107 F.3d at 785 (quoting United States v. McKinnell, 888 F.2d 669, 676 (10th Cir. 1989)). The relevance of Becker's prior convictions is undermined by the length of time between the prior acts and the conduct involved in the instant convictions—the two prior felony convictions preceded the incident by approximately six years and the prior raid preceded it by about four years. Four to six years transcends our conception of "close in time" as established in Wilson,107 F.3d at 785 (quotation omitted); cf. United States v. Ramirez, 63 F.3d 937, 943-44 (10th Cir. 1995) (upholding the admission of prior acts that occurred one year earlier); United States v. Record, 873 F.2d 1363, 1372-76 (10th Cir. 1989) (upholding the admission of prior acts that occurred approximately two to three years earlier); United States v. Mora, 845 F.2d 233, 237 (10th Cir. 1988)

(upholding the admission of a prior uncharged drug transaction occurring approximately one to two months earlier).

In addition to want of temporal proximity, the similarity of these prior acts to the instant methamphetamine offenses is limited. Under <u>Huddleston</u>, the illicit substance involved in the prior acts is of some relevance. There was the prior search and the unrelated prior conviction for conspiracy to possess, both of which involved methamphetamine. Three of the counts on which the jury convicted Becker involved methamphetamine as well. However, the prior recovery of methamphetamine trafficking paraphernalia from his residence and his prior convictions for conspiracy to possess methamphetamine and for failure to pay Kansas drug taxes involve only possession and distribution, not manufacturing, and thus lack a common scheme. Prior acts involving possession and distribution have some similarity to Becker's conviction for possession with intent to distribute marijuana, but the prior acts did not involve marijuana.

Often, the specific factual circumstances of prior acts can allow for further comparison to later offenses. For example, in <u>United States v. Conway</u>, 73 F.3d 975, 981 (10th Cir. 1995), we upheld the admission of prior arrests for selling cocaine from motel rooms to support a charge for possession with intent to distribute cocaine from neighboring motels. By contrast, in <u>Wilson</u>, 107 F.3d at 785, we held that a prior conviction arising from cocaine and marijuana found on

the defendant's person after a vehicle stop was not relevant to his arrest (eight months later) and subsequent indictment for distribution of cocaine from a residence. We cannot conduct such a comparison in the instant case because the record only contains bare evidence of Becker's plea of guilty to both charges without any indication as to the underlying factual circumstances. Because of the lack of evidence, we conclude that the prior acts are not close in time and have only facial similarities. Accordingly, the district court abused its discretion in admitting the evidence. The second Huddleston factor—relevance—is not met and, thus, as to the remaining Huddleston factors, the evidence necessarily is less probative than prejudicial and the district court's cautionary instruction to the jury was of limited utility.

Yet, this error is considered harmless "unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." United States v. Wacker, 72 F.3d 1453, 1473 (10th Cir. 1996) (quoting United States v. Flanagan, 34 F.3d 949, 955 (10th Cir. 1994)). In determining whether the error was harmless, we first note that, considering the defense theory that Becker used and possessed methamphetamine—but did not manufacture or distribute it—the evidence did have some probative value in rebutting Becker's theory as to his intent. His claim that the equipment was used to produce hash oil instead of methamphetamine is unpersuasive. In addition, Becker's admission

-17-

that he used and possessed methamphetamine effectively informed the jury of his involvement with methamphetamine. While this admission diminished the necessity of admitting the prior acts, it also diminished the prejudice resulting from the admission because the evidence was cumulative. Moreover, the district court instructed the jury to consider the evidence only for the purpose for which it was admitted.

"Where the evidence against a defendant is overwhelming, any error in mentioning a defendant's criminal record is harmless." United States v. Sloan, 65 F.3d 861, 865 (10th Cir. 1995) (citing United States v. Van Scoy, 482 F.2d 347, 349 (10th Cir. 1973)). Because there is overwhelming evidence absent Becker's prior convictions to support a guilty verdict, we conclude that any error or prejudice resulting from the admission of his prior convictions and the search of his residence is harmless.

## V

"Cumulative-error analysis applies where there are two or more actual errors." Moore v. Gibson, 195 F.3d 1152, 1175 (10th Cir. 1999) (internal quotation and citations omitted). Becker contends that even if we hold the individual errors harmless, cumulative error necessitates a new trial. As noted, the errors in admitting the out-of-court statements and Becker's prior acts are harmless in light of the substantial evidence presented to support a guilty verdict.

-18-

Considering these errors in the aggregate, we conclude upon review of the entire record that the cumulative error is harmless.

## VI

We review de novo the district court's determination that sufficient evidence existed to support a conviction. See United States v. McDermott, 64 F.3d 1448, 1457 (10th Cir. 1995). We view the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, "in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jones, 44 F.3d at 864-65 (citation omitted); see also United States v. Riggins, 15 F.3d 992, 994 (10th Cir. 1994).

Becker first argues that there was insufficient evidence to support his conviction on Count 1—attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The elements of that offense are (1) intent to manufacture methamphetamine, and (2) commission of an act which constitutes a substantial step towards commission of the substantive offense. See United States v. Leopard, 936 F.2d 1138, 1140 (10th Cir. 1991). Becker concedes that there was evidence supporting an inference of intent to manufacture, but contends that the second element of the offense is not satisfied because "[at] best, the

evidence reflects preparatory acts divided between the two distinct methods of making methamphetamine." (Appellant's Br. at 31.)

Although Becker is correct that the direct evidence is sparse, the circumstantial evidence is more than sufficient for a jury to draw reasonable inferences that Becker took substantial steps towards the commission of the substantive offense, i.e., manufacturing methamphetamine. See United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997) (holding that a "jury may draw reasonable inferences from direct and circumstantial evidence" (citation omitted)). The evidence presented goes beyond mere preparation. Becker concedes that a recipe for a "hot" method of cooking methamphetamine was present as well as some, though not all, of the ingredients for this method. Becker also concedes that most of the ingredients were present for manufacturing methamphetamine pursuant to a "cold" cooking method, but that no written copy of such a recipe was found. Many of the materials necessary for manufacturing methamphetamine were present, and it is not necessary for every chemical matching each recipe to be present. Moreover, a juror could readily have rejected Becker's explanation, see id., particularly considering testimony that certain chemicals were antithetical to the production of hash oil, which was Becker's proffered use for the equipment. Based on the physical evidence, coupled with

other admissible evidence, a rational juror could conclude that Becker took a substantial step towards manufacturing.

Becker also challenges, in a conclusory manner without citation to supporting legal authority, his convictions on Counts 2 and 4—managing and controlling a dwelling for the purpose of unlawfully manufacturing and storing methamphetamine and possessing acetone with the intent to manufacture methamphetamine. He contends that without the requisite proof of his attempt to manufacture methamphetamine for Count 1, Counts 2 and 4 also fail. Because we have already concluded that the evidence was sufficient to support Count 1, we find this challenge to Counts 2 and 4 meritless. The circumstantial evidence of ingredients, tools, and recipes is sufficient for a rational trier of fact to find the essential elements of the methamphetamine-related counts beyond a reasonable doubt. See Jones, 44 F.3d at 864-65.

## VII

In cases where the amount of drugs seized does not reflect the scale of the offense, the commentary to the Guidelines requires the trial judge to approximate the quantity of the controlled substance and permits the court to consider "the size or capability of any laboratory involved." See U.S.S.G. § 2D1.1, comment. (n.12); United States v. Havens, 910 F.2d 703, 704-05 (10th Cir. 1990). When manufacturing is at issue, "the trial court, upon proper testimony, may estimate

the ultimate quantity of producible drugs. This estimate should be equal to the amount of drugs producible if the precursor chemicals possessed by the defendant were combined with proportionate amounts of the missing ingredients including processing equipment."[3]  Havens, 910 F.2d at 705.  The government bears the burden of proving quantity by a preponderance of the evidence.  See, e.g., United States v. Ortiz, 993 F.2d 204, 207 (10th Cir. 1993).

In making its quantity determination, the district court stated:

> The Court finds that the U.S. Probation Office has accurately calculated the guidelines in this case.  By using the 160 ounces of muriatic acid to approximate the capability of the methamphetamine laboratory, the United States Probation Office took into account the amounts of muriatic acid that the defendant likely used in a prior cook, which utilized the recipe that would have produced 691 grams of methamphetamine.  The Court notes that when approximating drug quantities, when the drug seizure does not reflect the scale of the offense, the Court must base their findings on reliable information, and where uncertainty reigns, must err on the side of caution.  See United States v. Ortiz[, 993 F.2d at 208].  The U.S. Probation Office, with the assistance of the K.B.I. forensic laboratory, approximated the capability of the methamphetamine laboratory in this case and provided for error on the defendant's part, resulting in a reduced quantity.

(II Supp. R. at 5-6.)  We "defer[] to the district court's application of the guidelines to the facts" and review application of the Guidelines for errors of law.

---

[3]  Becker contends that approximation of drug quantity is a violation of due process.  We have rejected this due process argument, holding that "[i]t is not a denial of due process to determine facts based on estimates derived from expert testimony."  Havens, 910 F.2d at 706.

United States v. Smith, 888 F.2d 720, 723 (10th Cir. 1989) (quoting 18 U.S.C. § 3742(e)) (further citation omitted). Factual determinations are reviewed under the clearly erroneous standard. See United States v. Rutter, 897 F.2d 1558, 1563 (10th Cir. 1990). We will not disturb such a finding "unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made." United States v. Bernaugh, 969 F.2d 858, 864 (10th Cir. 1992) (citing United States v. Cook, 949 F.2d 289, 296 (10th Cir. 1991)).

The district court's findings were based on the presentence report and quantity estimates from the testing of Becker's recipes by KBI forensic chemist Dwaine Worley. Extrapolating from the quantity of muriatic acid, a precursor chemical that was found and apparently already used, the United States Probation Office arrived at theoretical yields for Becker's lab of up to 23 pounds of methamphetamine.[4] The presentence report then "used the most conservative estimate of 6 pounds of actual methamphetamine, which the defendant could have produced to calculate the guideline." (VII R. at 9.) The evidence presented at trial includes Worley's testimony that he tested one of the recipes seized from Becker's residence and concluded the recipe did produce methamphetamine, and

---

[4] Contrary to Becker's assertion, a decision to rely on one precursor chemical rather than another does not render a quantity determination clearly erroneous. See United States v. Lillard, 929 F.2d 500, 504 (9th Cir. 1991) (holding that estimation of drug quantity is not limited by the least abundant precursor chemical present).

based on his training and experience, the other recipe also would produce methamphetamine.

Becker challenges the trial courts determination of the approximated capability of the methamphetamine lab and argues the resultant quantity calculation was not supported by the evidence.  Becker's challenge to the district court's drug quantity approximation is very similar to one we rejected in United States v. Short, 947 F.2d 1445, 1455-58 (10th Cir. 1991).  There, the district court, pursuant to Havens, relied on a combination of expert testimony from trial and information in the presentence report to approximate a quantity of drugs that could have been produced by the defendant's methamphetamine laboratory.  See id. at 1456-57.  In Short, as in the case before us, the expert testimony at trial identified materials found in the defendant's home as elements of a viable methamphetamine cooking process, but did not testify as to the specific quantity that could be manufactured from the chemicals and equipment found.  See id. at 1457 & n.7.  The district court then relied on approximations in the presentence report that arrived at "what [the report] felt was an appropriate manufacturing yield factor."  Id. at 1456.  We declined to find "clear error in the district court's decision to base its calculations on the factual figures contained in the Amended Presentence Report."  Id. at 1457.

In doing so, we noted that the defendant had failed to produce an expert of his own to attack the proffered figures and concluded that the figures were "supported by expert testimony." Id. Even though that testimony did not detail the precise means of making the calculations, we concluded that "the information upon which the estimates are based has a minimum indicia of reliability." Id. at 1458 (quoting United States v. Easterling, 921 F.2d 1073, 1077 (10th Cir. 1990)). Becker likewise failed to produce an expert of his own to challenge the proffered figures.

Because the district court's finding has support in the record, we are not convinced that an error has been made. See Bernaugh, 969 F.2d at 864. The district court properly erred on the side of caution and sentenced Becker based on the more conservative estimated yield. See Ortiz, 993 F.2d at 208. We reject Becker's arguments that this estimation was impermissible and that the estimate was clearly erroneous.

## VIII

The judgment of the district court is **AFFIRMED**.

No. 98-3361, United States v. Becker

BALDOCK, Circuit Judge, concurring.

I join the Court's opinion except for Part II. The Court's ultimate conclusion in Part II that admission of the confidential informant's out-of-court statements constituted harmless error is in my opinion correct. I disagree, however, with the Court's hearsay analysis and believe its Sixth Amendment Confrontation Clause analysis wholly unnecessary.

The Court wrongly characterizes the confidential informant's out-of-court statements as hearsay. Fed. R. Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement not offered to prove the truth of the matter asserted, therefore, is not considered hearsay. In this case, the Government offered the confidential informant's statements not for the truth of the matter asserted, but to establish the reason for the investigation. As we stated in United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1986): "[O]ut of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." Because the Government in this case offered the confidential informant's out-of-court

statements to explain why the officer applied for a search warrant, such statements are not hearsay within the meaning of Fed. R. Evid. 801(c).[5]

The conclusion that the statements were offered to explain the reason for the investigation, rather than hearsay statements offered to prove the matter asserted, does not end our inquiry. Such statements must be evaluated for relevance under Fed. R. Evid. 401 and for undue prejudice under Fed. R. Evid. 403. Freeman, 816 F.2d at 563. Applying the proper analysis, I believe the confidential informant's statements were unduly prejudicial under Fed. R. Evid. 403. The statements specifically identified Defendant by name and went "precisely [to] the issue the government was required to prove." United States v. Cass, 127 F.3d 1218, 1223 (10th Cir. 1997). See also United States v. Pulley, 922 F.2d 1283, 1288 (6th Cir. 1991) (where propriety of investigative methods were not at issue, out-of-court statement naming defendant substantially increased the risk the jury would consider the out-of-court statement in determining defendant's guilt or innocence); 30B Michael H. Graham, Federal Practice and Procedure § 7005 at 49-51 (2000) (out-of-court statement indicating accused engaged in a

---

[5] While the Government appeared to invoke the statements for the truth of the matter asserted during closing argument, such subsequent reference does not render the statements hearsay for purposes of evidentiary rulings during trial. The Government's reliance on the statements during closing argument may have been improper but does not retroactively transform the statements from background information into inadmissible hearsay.

particular crime is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded on the grounds that the probative value of the statement admitted for a non-hearsay purpose is substantially outweighed by the danger of unfair prejudice under Rule 403).

Accordingly, I would conclude that the admission of the out-of-court statements was unduly prejudicial and constitutes an abuse of discretion.[6] Nevertheless, I agree with the Court's ultimate conclusion that admission of the confidential informant's out-of-court statements was harmless error.

---

[6] Because the confidential informant's statements were not hearsay, I further disagree with the court's conclusion that the admission of the statements violated Defendant's Sixth Amendment Confrontation Clause rights. See United States v. Wilson, 107 F.3d 774, 781 (10th Cir. 1997) (no basis for asserting a Sixth Amendment violation where defendant was not prohibited from confronting the witness against him because no hearsay statements were admitted).