FILED
United States Court of Appeals
Tenth Circuit

October 22, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CURTIS LEROY ROBERTSON,

Defendant-Appellant.

No. 07-6231
(D.C. No. 5:07-cr-00056-C-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

Curtis Leroy Robertson appeals his convictions for drug-trafficking and

firearm possession. He argues that (1) the district court erred in failing to

suppress evidence found in his pockets and in the motel room in which he was

arrested; (2) the district court abused its discretion in admitting evidence of his

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

prior drug and gun convictions; and (3) the prosecutor committed misconduct during closing arguments.  We affirm.

### BACKGROUND

On February 10, 2007, at roughly 8:00 p.m., Oklahoma City Police Officer Shawn Lindsey was patrolling a local hotel known for drug activity and prostitution.  While in a hallway, Officer Lindsey saw a man he recognized as "Graveyard" exit one of the suites.  R., Tr. of Jury Trial, Vol. I at 83.  Officer Lindsey asked to speak with Graveyard, who appeared more nervous than usual.  Graveyard pointed toward the back of the suite and said, "You can talk to my brother," apparently referring to Robertson, who was on the bed in the suite's bedroom.  *Id.* at 84.  As Graveyard began backing up into the suite, Officer Lindsey saw him slip his hand around the suite's door, and he heard Graveyard toss an object into a corner of the living room.  From the doorway, Officer Lindsey then saw that Robertson was entering the living room and that there was a small bag of marijuana in the middle of the room.  Believing that "some kind of crime [was] going on," Officer Lindsey entered the room, handcuffed Graveyard and Robertson, and discovered that the object thrown by Graveyard into the corner was a sack of twenty-six crack-cocaine rocks, individually packaged for sale.  *Id.* at 86, 87-88.

After another officer arrived on the scene, Officer Lindsey entered the bedroom and found a woman he recognized as a local crack addict and prostitute.

On a nightstand next to the bed there was a white powder residue and a razor blade covered in the residue. Officer Lindsey also saw in an open shoe box a baggie of marijuana, a set of digital scales, a baggie containing a large "crack cookie," a baggie of crack-cocaine crumbs, two vials of PCP, and plastic gloves. *Id.* at 100-01.

Officer Lindsey then placed Robertson, Graveyard, and the prostitute under arrest. While searching Robertson, Officer Lindsey found ninety-seven twenty-dollar bills and numerous bills of smaller denominations. A subsequent search of the suite, which was registered to a "Ricky Smith," *id.* at 121, revealed seven cell phones, baking powder next to a microwave oven, two handguns in the bedroom nightstand, Pyrex measuring cups, and a wire whisk. When Robertson was later booked into jail, the intake officer found among his property items a bullet that matched some of the ammunition present in one of the nightstand guns.

The government indicted Robertson and Graveyard, whose real name is Jupiter Rogers, on one count of possessing more than fifty grams of cocaine base with the intent to distribute, one count of conspiring to possess more than fifty grams of cocaine base with the intent to distribute, one count of possessing a firearm in furtherance of a drug-trafficking crime, and one count of being a felon in possession of a firearm and ammunition. The government also gave notice under Fed. R. Evid. 404(b) that it intended to offer at trial evidence of Robertson's prior drug and gun convictions.

Robertson moved to suppress all the evidence discovered on his person and in the hotel suite. The district court denied the motion, ruling that Robertson had no reasonable expectation of privacy in the suite.

Robertson and Rogers were tried together. During opening statements, Robertson's counsel announced that his theory of the case was simply that Robertson "was in the wrong place at the wrong time." *Id.*, Vol. I at 68.

In the government's case-in-chief, Officer Lindsey testified as to the significance of the various items found in the hotel suite. Regarding the numerous twenty-dollar bills in Robertson's possession, Officer Lindsey explained that "[c]rack cocaine is usually sold in twenty-dollar increments or twenty-dollar rocks." *Id.* at 112. As for the baking powder and oven, he indicated that they are typically used to make crack-cocaine out of powder cocaine. And he explained that individuals involved in the drug trade commonly have multiple cell phones to communicate with their drug runners and buyers.

Afterward, over Robertson's objection, the district court admitted evidence of Robertson's prior state-court drug and firearm convictions, finding that they tended to refute Robertson's defense theory. Accordingly, the jury was informed that (1) Robertson had pleaded guilty and was convicted in 1995 for drug-trafficking; and (2) Robertson had pleaded guilty and was convicted in 1998 for possessing a controlled dangerous substance, pointing a firearm at another person, and possessing a firearm after a felony conviction. The district court cautioned

-4-

the jury, however, that the evidence did "not mean that a defendant necessarily committed the acts charged in this case," and that the evidence could be considered only as it related to "intent, preparation, plan, knowledge, identity, absence of mistake or accident, and to corroborate" other testimony. *Id.*, Vol. II at 251.[1]

After the government rested its case-in-chief, Robertson offered a witness to support his defense theory and to explain the cash found on his person. Specifically, Robertson's uncle testified that he had loaned Robertson $1,140 in cash eight days before he was arrested to buy a car. On cross-examination, however, the uncle acknowledged that the loaned cash, which consisted of eleven one-hundred dollar bills and only two twenty-dollar bills, did not match the currency denominations found on Robertson. Robertson did not testify and did not call any other witnesses.

---

[1] "[A]s a general rule it is preferable to delay the admission of 404(b) evidence until after the defense rests because it places the trial court in the best position to determine whether the issue sought to be proved by the extrinsic act evidence is really in dispute, and if so, to assess its probative worth and possible prejudicial effect." *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985); *accord United States v. Colon*, 880 F.2d 650, 660 (2d Cir. 1989). But where, as here, "it is obvious that an appropriate consequential fact will be in issue, the trial court does not err by admitting other-crimes evidence as part of the government's case-in-chief." 2 Weinstein's Federal Evidence § 404.23[3] (2d ed. 2008) (collecting cases); *see, e.g.*, *United States v. Morales-Quinones*, 812 F.2d 604, 611-12 (10th Cir. 1987) (holding that district court did not err in admitting defendant's prior conviction during government's case-in-chief "to rebut defendant's expected defense [announced in opening statements] that he was not involved in the offense").

The jury returned guilty verdicts on all counts, prompting the instant appeal.

## DISCUSSION

### I. Fourth Amendment Suppression Issues

"In reviewing the district court's denial of a motion to suppress, we review the court's factual findings for clear error and view the evidence in the light most favorable to the government." *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008), *petition for cert. filed* (U.S. June 30, 2008) (No. 08-6063). As for issues of law, we apply de novo review. *United States v. Andrus*, 483 F.3d. 711, 716 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 1738 (2008).

The Fourth Amendment to the United States Constitution prohibits searches and seizures that are unreasonable. U.S. Const. amend. IV.[2] A person who claims that a warrantless search is unreasonable must, however, demonstrate a legitimate expectation of privacy in the place searched. *See Minnesota v. Olson*, 495 U.S. 91, 95 (1990). Such an expectation requires the manifestation of a subjective expectation of privacy in the searched place that society is prepared to recognize as reasonable. *See United States v. Barrows*, 481 F.3d 1246, 1248 (10th Cir. 2007).

---

[2] The Fourteenth Amendment's Due Process Clause extends the Fourth Amendment's reach to the conduct of state actors. *Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005).

To the extent that Robertson challenges the warrantless search of the motel suite, we recognize that "[o]vernight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property on which they are staying." *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). But persons who are not registered occupants and who are in the room for a limited period in pursuit of a commercial transaction, such as distributing illegal drugs, do not have a reasonable expectation of privacy in the room. *See Minnesota v. Carter*, 525 U.S. 83, 91 (1998); *United States v. Gordon*, 168 F.3d 1222, 1227 (10th Cir. 1999).

As noted by the district court, the suite was not registered to any of the occupants, and no personal items indicating an overnight stay were present. All the evidence indicated that the suite was used only to manufacture and distribute illegal drugs. Accordingly, the district court properly concluded that Robertson lacked a reasonable expectation of privacy in the motel suite and that he could not challenge the search of the suite.

The district court did not, however, address Robertson's challenge to the search of his person, which revealed the cash proceeds of crack-cocaine sales. Nevertheless, we may uphold the denial of a suppression motion if "any

reasonable view of the evidence" supports denying the motion. *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995).[3]

Police "officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence." *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008). A permissible warrantless arrest is one based on probable cause, which exists if the facts and circumstances are based on reasonably trustworthy information and would cause a person of reasonable caution to believe that a criminal offense has been or is being committed. *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209 (10th Cir. 2007). Here, Officer Lindsey arrested and searched Robertson after seeing throughout the suite various illegal drugs and the means with which to manufacture and distribute them. At that point there was probable cause to arrest Robertson, given that Officer Lindsey had seen him in the suite's bedroom, where much of the drugs and manufacturing/distribution items were found.

That Robertson was handcuffed upon Officer Lindsey's initial entry into the suite does not warrant a contrary conclusion. Officer Lindsey was justified in

---

[3]    While the district court did not discuss the constitutionality of the search of Robertson's person, its findings of fact are sufficient for us to resolve the issue without remand. *See United States v. Rubio-Rivera*, 917 F.2d 1271, 1275 (10th Cir. 1990) (declining to remand for further findings on the defendant's privacy expectation "because the legally operative facts" were undisputed); *cf. United States v. Fields*, 371 F.3d 910, 917 (7th Cir. 2004) (remanding for further factual findings because the appellate court could not "review the record in a meaningful manner").

detaining Robertson, given Graveyard's nervous behavior and toss of an object into the room, the baggie of marijuana lying in plain view on the living-room floor, and the reputation of the hotel as a hotbed of illegal drug activity. "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation omitted). Further, handcuffs can be employed without converting the detention into an arrest if "there is a reasonable, articulable ground for fearing danger from a particular individual." *United States v. Carter*, 360 F.3d 1235, 1240 (10th Cir. 2004) (quotation omitted). Given that Officer Lindsey was alone and outnumbered by at least two individuals apparently engaged in some sort of illegal drug activity, the use of handcuffs was consistent with a brief investigatory detention.

The district court did not err in denying Robertson's motion to suppress the evidence of drug trafficking found in the hotel suite and on his person.

## II.  Evidence of Prior Convictions

"We review a trial court's evidentiary rulings for an abuse of discretion." *United States v. Cherry*, 433 F.3d 698, 700 (10th Cir. 2005).  Under Federal Rule of Evidence "404(b), evidence of a defendant's prior crimes, wrongs, or acts is not admissible to prove character and that he acted in conformity therewith.  It may, however, be offered to prove motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident." *Id.* (quotation omitted).

Such evidence is properly admitted when (1) it was offered for a proper purpose;

(2) it was relevant; (3) its probative value was not substantially outweighed by its

potential for unfair prejudice; and (4) the district court, upon request, instructed

the jury to consider the evidence only for the purpose for which it was admitted.

*United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000).

Robertson argues that his prior convictions should not have been admitted

because they were too remote in time to be relevant. In calculating the time span

between his offenses and the instant crimes, we do not count any periods of

incarceration. *See Cherry*, 433 F.3d at 702 n.4. As far as we can tell from the

appellate record, Robertson was incarcerated from 1998 to 2004, before

committing the instant crimes in 2007. Consequently, the applicable time

between Robertson's 1995 conviction and the instant crimes is six years; and the

applicable time between his 1998 convictions and the instant crimes is three

years.

"There is no absolute rule regarding the number of years that can separate

offenses." *United States v. Cuch*, 842 F.2d 1173, 1178 (10th Cir. 1988)

(quotation omitted). Rather, we apply a reasonableness standard based on "the

facts and circumstances of each case." *Id.* (quotation omitted). Nevertheless, in

*Becker*, this court stated that a six-year time span between drug offenses is too

great to be relevant. 230 F.3d at 1232. We do not view that statement as a per se

temporal rule, however, as the court in that case went on to assess other factors bearing on relevance: the probative value and the similarity of the offenses. *See id.* at 1232-33; *see also United States v. Burse*, 150 F. App'x 829, 831 (10th Cir. 2005) (unpublished) (affirming the use of an eight-year old drug conviction, and noting that *Becker* "relied heavily on a fact-specific analysis of the relevance of the prior crimes"). Indeed, other Courts of Appeal routinely uphold the admission of prior drug convictions older than the ones in this case. *See, e.g., United States v. Gaddy*, 532 F.3d 783, 789 (8th Cir. 2008) (holding that prior drug convictions that were four, ten and eleven years old were not so remote from the charged drug offenses as to render them inadmissible); *United States v. Matthews*, 431 F.3d 1296, 1312 (11th Cir. 2005) (affirming the use of an eight-year-old drug conviction).

Considering the other factors bearing on relevance—similarity and probativeness—we conclude that Robertson's 1995 conviction for trafficking in cocaine base is relevant. Specifically, Robertson's 1995 conviction mirrors the instant crime of possessing cocaine base with intent to distribute, and that conviction was highly probative given Robertson's defense that his presence in the hotel suite was simply bad timing.

Robertson's three-year old conviction for possessing a controlled dangerous substance (cocaine base) is likewise relevant, as it involved the same drug at issue here. *See United States v. Mendoza*, 341 F.3d 687, 692 (8th Cir. 2003) (affirming

the admission of a three-year old conviction for possessing methamphetamine because it was probative of the "defendant's knowledge and intent concerning current charges of conspiracy to distribute that same drug"). The same holds true for his prior convictions for pointing a firearm at another person and possessing a firearm after a felony conviction. By claiming as a defense that he was in the wrong place at the wrong time, Robertson placed his state of mind at issue for the charged firearms offenses. *See United States v. Moran*, 503 F.3d 1135, 1144 (10th Cir. 2007) (affirming the admission of an eleven year-old conviction for being a felon in possession of a firearm to show "knowing possession of the firearm," where the defendant denied knowledge of the gun's presence), *cert. denied*, 128 S. Ct. 2424 (2008); *cf. United States v. Woodard*, 531 F.3d 1352, 1362 (11th Cir. 2008) (listing "knowing[ ] . . . possess[ion]" as an essential element of the crime of possessing a firearm in furtherance of drug trafficking).

In addition to contesting relevance, Robertson contends that his prior convictions should not have been admitted because they were too prejudicial, as they suggested that "he acted in conformity with his character by possessing guns and drugs in this case." Aplt. Br. at 14. The district court instructed the jury, however, as to the proper uses of this evidence. Moreover, relevant evidence "may be excluded only if its prejudicial value *substantially* outweighs its probative value." *United States v. Smith*, 534 F.3d 1211, 1218 (10th Cir. 2008) (emphasis added) (citing Fed. R. Evid. 403). This means that the evidence will

-12-

likely "provoke[ ] an emotional response in the jury or otherwise tend[ ] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Smith*, 534 F.3d at 1219 (quotation omitted). We conclude that the prior convictions' probative value was not substantially outweighed by the danger of unfair prejudice. Accordingly, the district court did not abuse its broad discretion in admitting Robertson's prior convictions.

### III. Closing Arguments

During closing argument, the prosecutor urged the jury to hold Robertson accountable and "[c]omplete the circle." R., Tr. of Jury Trial, Vol. II at 375. Specifically, the prosecutor stated:

> A case arises most times because the community cries out and says to law enforcement, "We need help. We've got a problem and we feel helpless to do anything about it. We need you to come in and help us." And an officer, like Shawn Lindsey [and two other officers who testified at trial] answer the call. They arrive and they say, "People of the community, we will do everything we can to hold these people responsible, we'll do everything we can to give you piece of mind," and they do the job and they make the arrest and they catch the guys.

*Id.* at 373. At that point, Roger's counsel objected, arguing that the prosecutor was attempting to inflame the passions of the jury and to "align[ ] the prestige and power of [the prosecutor's] office behind the officers." *Id.* at 374. Robertson's counsel joined in the objection. The district court overruled the objection, and the prosecutor resumed the line of argument:

[Law enforcement officers] can make an arrest but that's all they can do.  So they come to offices like mine and say, "Please help us. Please help us hold these men accountable."
. . . .

But I know I can't hold them accountable.  I don't have that power.  And this courthouse doesn't have that power.  And that's the beauty of our system, because the people that have the power are you [the jury].  That's how the circle operates.  It goes from citizens who felt helpless right back to citizens who are given the ultimate power to make the decision and . . . hold them accountable for their actions and no longer be helpless.

Ladies and gentlemen, that's all we ask you to do in this case, is exercise your power, exercise your power in a fair and just way. Complete the circle.  Hold [the defendants] accountable of every count of this indictment and find them guilty of all counts.

*Id.* at 375.  In his rebuttal argument, the prosecutor again urged the jury to

"complet[e] the circle":

And as I told you before, your decision is completing the circle.  Your decision is one that's empowered to make something happen, to hold men accountable for their actions, hold men accountable for spreading poison throughout our communities, to hold men accountable for fear with firearms, to hold men accountable for what they choose to do instead of working legitimate jobs, what they choose to do to get by without having to do what each of us do, and what they choose to do to the detriment of everyone around them.  And when you're completing that circle and when you're holding them accountable, all the law asks is just use that good reason and good common sense each of you are blessed with.

*Id.* at 396-97.

Robertson contends that the prosecutor committed misconduct by

encouraging the jury to believe that its duty was to convict rather than to find

guilt or innocence.  "It is improper for a prosecutor to suggest that a jury has a

civic duty to convict."  *Wilson v. Sirmons*, 536 F.3d 1064, 1120 (10th Cir. 2008)

-14-

(quotation omitted). We believe that the prosecutor's exhortation to "[c]omplete the circle" and hold Robertson accountable was tantamount to imploring the jury to convict as part of its civic duty. Essentially, the prosecutor gave the jury a simplified characterization of the justice system, i.e., the "circle," in which its only role was to convict in order to safeguard the community. This was improper. *Compare United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008) (indicating that the prosecutor committed misconduct in urging the jury to "end the cycle of violence out there"), *with Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005) (finding no misconduct where the prosecutor described the jury's duty as a "double-pronged sword," under which the jury had to turn the defendant loose if the elements of the crime were not met, but convict him if the elements were met).

But Robertson did not object on the basis of a civic-duty argument. Rather, the objection concerned inflaming the jurors' passions and vouching for the police witnesses. Indeed, the prosecutor did not develop his argument into a civic-duty appeal until after there was an objection. And there was no objection once it was clear where the argument was headed. Consequently, we review Robertson's challenge to the prosecutor's civic-duty arguments for plain error. *See United States v. Hall*, 473 F.3d 1295, 1305 (10th Cir. 2007); *cf. United States v. Ramirez*, 348 F.3d 1175, 1181 (10th Cir. 2003) ("The specific ground for reversal of an

evidentiary ruling on appeal must be the same as that raised at trial." (quotation omitted)).

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Taylor*, 514 F.3d at 1100. Given the overwhelming evidence of Robertson's guilt on each of the charged offenses, we conclude that there is no reasonable probability that the prosecutor's civic-duty arguments affected Robertson's substantial rights, i.e., the outcome of his trial. *See United States v. Cotton*, 535 U.S. 625, 632 (2002); *United States v. Hasan*, 526 F.3d 653, 664-65 (10th Cir. 2008). Specifically, Robertson was found in the hotel suite, which contained drugs and the equipment necessary to manufacture and distribute crack cocaine, he was seen on the bed near the nightstand in which the guns were found, and he was carrying a bullet matching one of those guns and the cash proceeds of crack cocaine sales. Further, the jury instructions properly described the jury's duty as determining the facts and "whether the prosecution has proved the defendant guilty beyond a reasonable doubt." R., Pleadings, Doc. 98 at 2. We presume that Robertson's jury followed its instructions. *See United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002). Finally, Robertson's defense theory was not supported by any evidence, including the testimony of his only witness.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge