**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 23 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RUBEN ALMARAZ,

      Defendant-Appellant.

No. 01-2049

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-98-976-BB)**

---

James T. Martin (David C. Iglesias, United States Attorney, with him on the brief), Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

Richard Winterbottom, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and **RUSSELL**,[*] District Judge.

---

**BRORBY**, Circuit Judge.

---

    [*] The Honorable David L. Russell, Chief United States District Judge for the Western District of Oklahoma, sitting by designation.

Ruben Almaraz appeals from his conviction and sentence for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. He claims the government failed to present sufficient evidence he organized, supervised, or managed five other persons during the course of the three drug violations for which the jury returned a guilty verdict or at any other time. This case presents our first opportunity to interpret the continuing criminal enterprise statute in light of *Richardson v. United States*, 526 U.S. 813 (1999). We must decide whether the continuing criminal statute, in light of *Richardson*, requires a *conviction* on the predicate acts underlying the continuing criminal enterprise charge. Our jurisdiction arises under 28 U.S.C. § 1291. After careful consideration, we affirm.

## BACKGROUND

The federal "drug king pin" statute forbids any "person" from engaging in a continuing criminal enterprise. 21 U.S.C. §848(a). A conviction on this statute carries a harsh penalty, requiring the trial court to impose a twenty-year mandatory minimum prison term. *Id.* A continuing criminal enterprise is defined as a violation of the drug statutes where "such violation is a part of a continuing series of violations ... undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer,

a supervisory position, or any other position of management." 21 U.S.C. §848(c).

This case involves a drug organization that imported cocaine from Mexico for distribution in the Las Cruces, New Mexico, area. At the heart of this organization were Ruben Almaraz and his younger brother, Carlos Almaraz.[1] The organization was comprised of family members and longtime close friends of the Almaraz family. The Almaraz brothers supplied large amounts of cocaine for sale by their street-level dealers. A family restaurant, where both men worked, served as a cover for and a focal point of their drug distribution enterprise.

Jesus Orozco, a friend of the Almaraz brothers, assisted in the cocaine distribution efforts. Janette Orozco is his wife. The parties dispute whether she was involved in the drug organization. When things got too hot for Jesus Orozco because he became concerned law enforcement officials were watching him, he was replaced as a street-level dealer by two brothers, Carlos and Antonio Lopez. Jesse Chavez arrived on the scene late in the game when Carlos Almaraz and Jesus Orozco gave a confidential informant a pager number. Jesse Chavez manned that pager, returned phone calls, and sold cocaine for the organization.

---

[1] We refer to the defendant-appellant Ruben Almaraz as Mr. Almaraz. To avoid confusion we refer to the other co-defendants by their first and last names.

After several months of surveillance and controlled drug buys, law enforcement officials presented charges against Mr. Almaraz, Carlos Almaraz, Jesus Orozco, Janette Orozco, Carlos Lopez, Antonio Lopez, and Jesse Chavez to a grand jury. The grand jury returned an indictment against Mr. Almaraz and these six co-defendants on numerous drug offenses. Specifically, Count I charged Mr. Almaraz and his brother, Carlos Almaraz, with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.[2] Count II charged all seven co-defendants with conspiracy. Counts VI and VII charged Mr. Almaraz and

---

[2] Count I of the eleven-count second superseding indictment alleged:

> On or about the 1st day of December, 1997, and continuing thereafter up to and including November 24, 1998, ... the defendants, RUBEN ALMARAZ and CARLOS ALMARAZ, unlawfully, knowingly and intentionally engaged in a continuing criminal enterprise in that the defendants knowingly violated provisions of Title 21, United States code, Sections 841 and 846, including but not limited to the violations alleged in counts Three through Eleven of this Second Superseding Indictment, which counts are re-alleged herein by reference as if fully set forth in this count, all of which violations were part of a continuing series of violations of Title 21 of the United States code, undertaken by the defendants with at least five (5) other persons, including but not limited to JESUS OROZCO a/k/a "Chuy", JANETTE OROZCO, CARLOS LOPEZ a/k/a "Congo", ANTONIO LOPEZ a/k/a "Flaco", and JESSE CHAVEZ a/k/a Lorenzo Lopez, with respect to whom the defendants occupied a position of organizer, supervisor, and manager, and from which continuing series of violations the defendants obtained substantial income and resources.

> In violation of 21 U.S.C. § 848(a).

-4-

Jesus Orozco with possession with intent to distribute less than 500 grams of cocaine and Count X charged Mr. Almaraz, Carlos Almaraz and Antonio Lopez with possession with intent to distribute more than 500 grams of cocaine.

Mr. Almaraz stood trial with four co-defendants: Carlos Almaraz, Jesus Orozco, Janette Orozco and Antonio Lopez. At the close of the government's case in chief, Mr. Almaraz asked for a judgment of acquittal on all counts, arguing the evidence was insufficient to prove he organized, supervised, or managed five or more persons. The district court denied his motion. Just before closing arguments, he renewed his motion for judgment of acquittal, properly preserving the issue for appeal. Again, the motion was denied.

The jury returned guilty verdicts on all but the conspiracy count.[3] The district court subsequently sentenced Mr. Almaraz to concurrent terms of imprisonment of 240 months on Count I, 240 months on Count X, and 240 months on Counts VI and VII, to be followed by concurrent terms of supervised release of five years on Counts I and X and three years on Counts VI and VII. Mr. Almaraz does not contest his convictions on Counts VI, VII and X.

---

[3] The district court instructed the jury not to consider the conspiracy count if it convicted Mr. Almaraz of engaging in a continuing criminal enterprise.

## DISCUSSION

Mr. Almaraz argues a continuing criminal enterprise conviction "requires proof that the defendant supervised five or more persons while committing the violations on which the jury unanimously agrees." His argument is based on his reading of the continuing criminal enterprise statute in light of *Richardson v. United States*, 526 U.S. 813 (1999). First, he claims the evidence was insufficient to prove he organized, supervised, or managed five or more persons at any time. As his second contention, Mr. Almaraz argues as a matter of law that even if there was sufficient evidence he organized, supervised, or managed five people at some point, there was no evidence he organized, supervised, or managed five persons while committing the three violations on which the jury agreed. He contends "[t]he government presented proof in this case of only two persons under [his] supervision in the course of the three possession with intent to distribute cocaine offenses of which he was convicted." This argument assumes the jury is limited to considering only those offenses on which it returns a guilty verdict when determining whether a defendant organized, supervised, or managed five or more people. We address Mr. Almaraz' arguments in reverse order, attending to the legal question first, then his sufficiency of the evidence claim.

### I

Mr. Almaraz contends the continuing criminal enterprise statute, 21 U.S.C.

§ 848, "requires proof that the defendant supervised five or more persons during the commission of the agreed-upon violations" and assumes the "agreed-upon violations" are offenses of conviction. This presents an issue of statutory interpretation, a question of law which we review *de novo*. *United States v. Roberts*, 898 F.2d 1465, 1469 (10th Cir. 1990). Section 848 provides:

> [A] person is engaged in a continuing criminal enterprise if –
>
>> (1) he violates any provision of [the federal drug laws] the punishment for which is a felony, and
>>
>> (2) such violation is a part of a continuing series of violations of [the federal drug laws] –
>>
>> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
>>
>> (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848. Mr. Almaraz asks us to construe this statute in light of the United States Supreme Court decision in *Richardson*.

*Richardson* involved an appeal from a conviction for engaging in a "continuing criminal enterprise" in violation of 21 U.S.C. § 848. In *Richardson*, the trial court "rejected Richardson's proposal to instruct the jury that it must 'unanimously agree on which three acts constituted [the] series of violations.'"

*Richardson,* 526 U.S. at 816. The trial court did instruct the jury that it "'must "unanimously agree that the defendant committed at least three federal narcotics offenses.'" *Richardson*, 526 U.S. at 816. However, the judge added, "'You do not ... have to agree as to the particular three or more federal narcotics offenses committed by the defendant.'" *Richardson*, 526 U.S. at 816. Recognizing a split in the circuit courts,[4] the Supreme Court granted certiorari and reversed Richardson's conviction holding, "unanimity in respect to each individual violation is necessary." *Id.*

The holding in *Richardson* is based on the distinction between the elements of an offense and the means by which the government may satisfy an element. *United States v. Powell*, 226 F.3d 1181, 1196 (10th Cir. 2000), *cert. denied*, 531 U.S. 1166 (2001). A jury cannot convict a defendant unless it unanimously finds the government proved each element of the offense, but the jury need not always decide unanimously on which of several possible means the defendant used to commit an element of the crime. *Richardson*, 526 U.S. at 817. The Supreme

---

   [4] *Richardson* cited three circuit court cases, comparing *United States v. Edmonds* 80 F.3d 810, 822 (3rd Cir.1996) (en banc) (jury must unanimously agree on which "violations" constitute the series), with *United States v. Hall*, 93 F.3d 126, 129 (4th Cir. 1996) (unanimity with respect to particular "violations" is not required), and *United States v. Anderson*, 39 F.3d 331, 350-51 (D.C. Cir. 1994) (same). *Richardson,* 526 U.S. at 816.

Court explained,

> [i]f the [continuing criminal enterprise] statute creates a
> single element, a "series," in respect to which individual
> violations are but the means, then the jury need only
> agree that the defendant committed at least three of all
> the underlying crimes the Government has tried to
> prove. The jury need not agree about which three. On
> the other hand, if the statute makes each "violation" a
> separate element, then the jury must agree unanimously
> about which three [underlying] crimes the defendant
> committed.

*Id.* at 818. The Supreme Court determined each individual violation is an element

of the continuing criminal enterprise statute and concluded, "the statute requires

jury unanimity in respect to each individual 'violation.'" *Id.* at 818-19, 824. The

Supreme Court assumed, without deciding, the necessary number of underlying

predicate violations is three, the number used in Mr. Richardson's trial. *Id.* at

818.

For our purposes then, the jury must be instructed to unanimously find the

defendant committed at least three underlying predicate violations of the

applicable drug statutes when determining whether the defendant committed a

"series of violations" within the rubric of the continuing criminal enterprise

statute. Instruction Number 8 informed the jury:

> Title 21, United States Code, Section 848, makes it a crime for
> anyone to engage in a continuing criminal enterprise.

For you to find Defendant Ruben Almaraz or Defendant Carlos Almaraz guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant committed a felony in violation of the Controlled Substances Act as charged in the indictment;

Second: That such violation was part of a continuing series of violations, as hereinafter defined;

Third: That the defendant obtained substantial income or resources from the series of violations; and

Fourth: That the defendant undertook such violations in concert with five or more persons with respect to whom the defendant occupied a position of organizer, supervisor or manager. The five other persons need not have acted at the same time or in concert with each other.

A "continuing series of violations" means at least three violations of the Controlled Substances Act, and also requires a finding that those violations were connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts. *You must unanimously agree about which violations constitute the continuing series of violations*.

(Emphasis added.) This jury instruction clearly meets the standard announced by the majority in *Richardson*. It "requires jury unanimity in respect to each individual 'violation'" that makes up the "series of violations." *Richardson*, 526 U.S. at 824. Indeed, Mr. Almaraz does not contend the instruction runs afoul of the limited holding in *Richardson*.

Additionally, even if the jury had not been so instructed, it did return a

-10-

guilty verdict on the three drug statute violations charged in the indictment. Therefore, it unanimously found Mr. Almaraz committed at least those three violations. On appeal, Mr. Almaraz does not contest those convictions or whether they constituted a "series of violations" within the meaning of the statute. Because the jury was properly instructed and Mr. Almaraz concedes he committed the individual crimes charged against him in the indictment, he does not complain his conviction runs contrary to the limited holding in *Richardson*.

However, Mr. Almaraz asks us to construe the continuing criminal enterprise statute in light of *Richardson*, conceding the majority decision in *Richardson* left open the two questions relevant to his appeal.[5] First, whether, as a necessary consequence of the Supreme Court's decision, the jury must unanimously agree on which specific transactions were undertaken in concert with

---

[5] Justice Kennedy's dissent in *Richardson* warned that a necessary consequence of the Court's decision would require the jury to agree on which transactions were undertaken in concert with five or more other persons. *Richardson*, 526 U.S. at 830-31. The *Richardson* majority responded the jury need not unanimously agree the defendant was involved with five or more persons in *each* of the specific underlying violations. *Id.* at 823. "Those requirements must be met with respect to the *series*, which, at a minimum, permits the jury to look at all of the agreed-upon violations in combination." *Id.* at 823. While the dissent concluded there must be proof the defendant supervised five or more persons while committing the agreed-upon violations, the majority declined to reach that question.

-11-

five or more other persons. And second, whether the underlying predicate violations are limited to the three offenses of conviction.

## A

Mr. Almaraz argues "it follows from a natural reading of the statute that the defendant must be found to have supervised five or more persons during the course of the agreed-upon violations." Relying on *United States v. Lopez*, 248 F.3d 427 (5th Cir.), *cert. denied*, 122 S. Ct. 222 (2001), he urges us to expand the limited holding in *Richardson* and to require a jury finding that the specific violations underlying the "continuing series of violations" were undertaken in concert with five or more persons.[6] The jury instruction given by the district court in this case required the jury to find the "defendant undertook such violations in concert with five or more persons with respect to whom the defendant occupied a position of organizer, supervisor or manager." This jury instruction, by its own terms, elicits the finding Mr. Almaraz urges us to require.

---

[6] Mr. Almaraz invites us to follow *Lopez*. In *Lopez* the Fifth Circuit stated, but did not hold, "the defendant must have committed these violations 'in concert with five or more other persons whom he organized, supervised, or managed.'" *Id.* at 429 n.2. However, the Fifth Circuit published an opinion after *Lopez* which expressly noted *Richardson* did not require the jury to "find that each predicate violation was undertaken in concert with five or more other persons." *United States v. Santana-Madera*, 260 F.3d 133, 140 n.3 (5th Cir. 2001), *cert. denied,* 122 S. Ct. 817 (2002). Therefore, we do not find the *Lopez* decision necessary, or helpful, to our analysis.

-12-

The phrase "such violations" in the instruction refers to the violations that make up the "series of violations" the jury was instructed to find unanimously. We presume jurors attend closely to the language of the instructions in a criminal case and follow the instructions given them. *United States v. McSwain*, 197 F.3d 472, 481 (10th Cir. 1999), *cert. denied*, 529 U.S. 1138 (2000). Based on this instruction, we assume the jury understood it must be unanimous on the specific findings underlying its verdict. *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997). Although the limited holding in *Richardson* did not require an instruction that the "series of violations" found by the jury must be undertaken in concert with five or more people, this particular jury was so instructed and we presume it followed those instructions. *See Santana-Madera*, 260 F.3d at 140 n.3 (noting *Richardson* did not impose a requirement that the jury find each predicate violation was undertaken in concert with five or more other persons).

**B**

This brings us to the heart of the argument submitted by Mr. Almaraz: whether the predicate acts underlying the continuing criminal enterprise conviction are limited to those acts for which the jury returned a guilty verdict. More specifically: are the "agreed-upon violations" that make up the "series of violations" limited to acts for which the jury returns a guilty verdict, or may the

jury consider other acts established at trial? The district court instructed the jury it had to find Mr. Almaraz "undertook *such violations* [*i.e.*, the "series of violations"] in concert with five or more persons with respect to whom the defendant occupied a position of organizer, supervisor or manager" (emphasis added), to return a guilty verdict. The instruction did not limit the violations to those for which it returned a conviction. Therefore, the instruction as given does not resolve this part of the issue presented by Mr. Almaraz.[7]

Mr. Almaraz calls on us to consider the continuing criminal enterprise statute in light of *Richardson* and to conclude the jury could not have found he organized, supervised, or managed five or more persons during the course of the three violations for which it returned guilty verdicts. The jury convicted Mr. Almaraz on Counts I, VI, VII, and X. Count I is the continuing criminal enterprise charge at issue here. If the "series of violations" for the continuing criminal enterprise is limited to the charges on which the defendant is charged and convicted as Mr. Almaraz contends, then the series of violations is limited to

---

[7] Mr. Almaraz proffered a jury instruction that would have limited the "continuing series of violations" to the violations "as charged in Counts VI, VII and X of the Second Superseding Indictment." The district court did not use his proffered instruction. However, he did not object to the instruction given, and does not challenge the instruction on appeal.

Counts VI, VII and X. Counts VI and VII involved Jesus Orozco and Mr. Almaraz. Count X involved Carlos Almaraz, Antonio Lopez, and Mr. Almaraz. If Mr. Almaraz is correct, he organized, supervised, or managed, at most, three people: Carlos Almaraz,[8] Jesus Orozco, and Antonio Lopez, and the evidence is insufficient to uphold his conviction under the continuing criminal enterprise statute.

The *Richardson* Decision

The question before us is whether the predicate acts underlying the continuing criminal enterprise conviction are limited to those acts for which the jury returned a guilty verdict. Mr. Almaraz contends a natural reading of *Richardson* requires a conviction on the predicate acts that make up the "continuing series of violations." In other words, for the jury to consider the violation as part of "such violations [the defendant undertook] in concert with five or more persons," the defendant must be tried and convicted of that particular violation. This argument assumes the jury could only "agree upon," or unanimously find those violations for which it returned a guilty verdict.

---

[8] Whether Mr. Almaraz organized, supervised, or managed Carlos Almaraz is a matter of dispute between the parties we resolve later in this opinion.

We think this reading reaches too far beyond the narrow scope of the majority decision in *Richardson*. *Richardson* does not require a conviction on all of the violations that make up the "series of violations." Instead, the majority's holding merely requires the jury to unanimously determine which violations make up the series. In response to arguments made by the government and the dissent, the Court made clear the narrow scope of its holding:

> To the extent the dissent suggests that those other statutory requirements must be satisfied with respect to *each* underlying crime, it is clearly wrong. Those requirements must be met with respect to the *series*, which, at a minimum, permits the jury to look at all of the agreed-upon violations in combination. Even if the jury were limited to the agreed-upon violations, we still fail to see why prosecutions would prove unduly difficult.

*Richardson*, 526 U.S. at 823. The Court also assumed, "without deciding, that there is no unanimity requirement in respect to these other provisions [identity of the five people and substantial income], [and] nonetheless [found] them significantly different from the provision" before it. *Id.* at 824. Based on the Court's reluctance to reach several issues pressed by the government and the dissent, we are reluctant to expand the Court's holding as Mr. Almaraz requests.[9]

---

[9] Our sister circuits have also read the majority decision in *Richardson* narrowly. *See, e.g., United States v. Harris*, 209 F.3d 156, 160 (2d Cir. 2000) (noting the *Richardson* opinion and holding the government need not prove the identities of the five persons supervised); *United States v. Escobar-de Jesus*, 187 F.3d 148, 162 n.8 (1st Cir. 1999) (leaving the questions left unanswered by *Richardson* "for another day"), *cert. denied*, 528 U.S. 1176 (2000); *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) (noting *Richardson* decision "raises

-16-

<u>The Continuing Criminal Enterprise Statute</u>

"When interpreting a statute, we look first to the language." *Id.* at 818.
The language of § 848 is plain. The first element of the crime is the *violation* of
the drug statutes. 21 U.S.C. § 848(b)(1). Section 848 and *Richardson* both use
the term "violation," not the word "conviction." Unlike *Richardson,* the relevant
provision and the facts in this case do not "permit either interpretation."
*Richardson*, 526 U.S. 818. Construing the continuing criminal enterprise statute
in the past, we gave the terms their everyday nontechnical meanings. *McSwain*,
197 F.3d at 478. We see no reason to stray from that precedent. Absent a clearly
expressed legislative intent to the contrary, clear statutory language ordinarily is
regarded as conclusive. *United States v. Hall*, 843 F.2d 408, 410 (10th Cir.
1988). We presume Congress would have used the term "conviction" if it wished
to limit the acts that make up the "continuing series of violations" to act for
which the jury returned a guilty verdict. Committing a "violation of" the drug
statutes is simply not the same as being "convicted of" those crimes. Therefore,
we hold the jury is not limited to considering only those acts for which it returned
a guilty verdict when determining which acts make up the "continuing series of

the question of whether this Circuit's precedent that does not require jury
unanimity as to the identities of supervisees still stands," and holding the district
court did not err in refusing the proposed jury instruction which would have
required such unanimity), *cert. denied*, 528 U.S. 1091 (2000).

-17-

violations" undertaken with five or more people.

This does not end our analysis, however. *Richardson* did not indicate which violations the jury can consider when determining whether the defendant organized, supervised, or managed five or more people. In this case we have already concluded the jury is not limited to considering the convicted offenses. However, these questions remain: Is the jury limited to those violations alleged specifically in the indictment, or can the indictment allege violations generally, as long as the charge tracks the statutory language? Do the violations need to be alleged in the indictment at all if the government presents sufficient evidence the violations occurred? We leave these thorny questions for another day because the government alleged specific violations in the indictment and, as we discuss below, Mr. Almaraz organized, supervised, or managed at least five persons during the course of the specific violations alleged in the indictment.

**II**

Mr. Almaraz claims the government did not present sufficient evidence to prove he organized, supervised, or managed five or more persons *at any time*, as required by 21 U.S.C. §848(c)(2)(A). When evaluating the sufficiency of evidence supporting a conviction, we conduct a *de novo* review of the entire

record. *United States v. Whitney*, 229 F.3d 1296, 1300 (10th Cir. 2000). Mr. Almaraz bears a heavy burden to succeed on his sufficiency of the evidence claim, as we review the evidence in the light most favorable to the government, determining whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Apodaca*, 843 F.2d 421, 425 (10th Cir.) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)), *cert. denied*, 488 U.S. 932 (1988).

A continuing criminal enterprise conviction must be supported by, *inter alia*, proof the defendant acted "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. §848(c)(2)(A). In determining whether a defendant was an organizer, supervisor, or manager of a continuing criminal enterprise, we give these terms "their nontechnical, everyday meanings." *McSwain*, 197 F.3d at 478. The statute is phrased in the disjunctive, therefore, the evidence is sufficient if it shows the defendant acted as either an organizer, a supervisor, or a manager. *Apodaca,* 843 F.2d at 426. The supervisory relationships "need not have existed at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five" other persons involved. *McSwain*, 197 F.3d at 478 (quoting

*Apodaca* 842 F.2d at 426).  The "defendant may not insulate himself from liability by delegating authority."  *McSwain*, 197 F.3d at 479.  Because the defendant's role within the organization may be flexible, there is no requirement that the defendant be the dominant organizer, supervisor, or manager of the enterprise. *McSwain,* 197 F.3d at 478.  The defendant need not be the only manager.  *Id.* at 479.  In fact, most significant to this appeal, a co-defendant also can be a co-manager and can be included as one of the five others with respect to whom the defendant holds a supervisory position.  *Id.* at 479-80.

Mr. Almaraz concedes the requisite relationship between himself and two other people:  Jesus Orozco and Antonio Lopez.  However, he claims the evidence he supervised Janette Orozco, Carlos Lopez, Jesse Chavez or Carlos Almaraz is insufficient to sustain his conviction.  We will discuss the evidence concerning each of the remaining co-defendants in turn.

Janette Orozco

The jury acquitted Janette Orozco on the conspiracy charge and the charge related to a drug transaction between her husband and a confidential informant on March 18, 1998.  However, the jury did find Janette Orozco guilty of one count of possession of cocaine with intent to distribute less than 500 grams on April 17,

1998.

In its brief on appeal, the government does not address whether Janette Orozco should be considered one of the five supervisees. During oral argument the government denied conceding the issue. Nevertheless, arguments not briefed on appeal are waived. *See United States v. Jenkins*, 904 F.2d 549, 554 n.3 (10th Cir.) (declining to consider issue raised for first time in reply brief), *cert. denied*, 498 U.S. 962 (1990). Raising the issue for the first time at oral argument affords the defendant an inadequate opportunity to address it. It is unfair to lie in wait until oral argument to present issues material to the appeal. In the background section of its brief, the government did briefly describe Janette Orozco's behavior during a drug transaction. However, this perfunctory and cursory reference without citation to authority in support of a legal argument is inadequate to warrant consideration. *See United States v. LaHue*, 261 F.3d 993, 1009 (10th Cir. 2001) (holding issue waived when party fails to make any argument or cite any authority to support assertions), *cert, denied*, 122 S. Ct. 818 (2002); *Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (noting the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed *waived*.")). Therefore, we will not consider whether

-21-

Janette Orozco was one of the five individuals necessary to sustain Mr. Almaraz' continuing criminal enterprise conviction.

Carlos Lopez

Mr. Almaraz claims Carlos Lopez "was merely present with his brother Antonio [Lopez]" during a drug transaction on September 21, 1998, and was not under the supervision of Mr. Almaraz. On September 16, 1998, Jesus Orozco gave a confidential informant a slip of paper with the names "Congo" and "Flaco" and a pager number written on it. Trial testimony identified Carlos Lopez as "Congo" and Antonio Lopez as "Flaco." On September 21, 1998, Carlos Lopez and his brother, Antonio Lopez, sold two ounces of cocaine to a confidential informant and an undercover agent. Antonio Lopez told the two men Jesus Orozco gave him the business. Carlos Lopez was present during an extended discussion about future drug purchases and prices. At the conclusion of the discussion, Antonio Lopez gave the confidential informant and undercover agent a new pager number and told them it belonged to his brother, Carlos Lopez. Viewing this evidence in the light most favorable to the government, a reasonable juror could find Carlos Lopez was a member of the Almaraz organization, which was organized, supervised, or managed by Mr. Almaraz.

Jesse Chavez

Mr. Almaraz argues Jesse Chavez "was not shown to have been subject to [Mr.] Almaraz's managerial authority." It is true the government did not present evidence of personal contact between Mr. Almaraz and Jesse Chavez. However,

> the defendant need not have had personal contact with each of the five persons involved. Nor must each transaction with or instruction to those persons organized or managed specifically originate with the defendant. The mere delegation of managerial and supervisory duties will not defeat an individual's ultimate status as organizer, supervisor, or manager.

*Apodaca,* 843 F.2d at 426 (citations omitted).

Sometime before November 2, 1998, Carlos Almaraz and Jesus Orozco gave a confidential informant a pager number. On November 2, and again on November 5, 1998, the confidential informant used this pager number. Jesse Chavez returned the calls and arranged to meet the confidential informant. Jesse Chavez sold the confidential informant one ounce of cocaine. A jury could infer Jesse Chavez worked for the Almaraz organization from the testimony indicating a cocaine buyer was referred to him by Carlos Almaraz and Jesus Orozco. While not overwhelming, this evidence is sufficient to support the government's claim Jesse Chavez was a member of the Almaraz organization and was indirectly supervised by Mr. Almaraz.

Carlos Almaraz

Mr. Almaraz contends the evidence is insufficient to prove Mr. Almaraz organized, supervised, or managed Carlos Almaraz in the criminal enterprise.[10]

Mr. Almaraz contends the indictment alleged Mr. Almaraz *and* Carlos Almaraz organized, supervised or managed at least five other persons, listing five people:  Jesus Orozco, Janette Orozco, Antonio Lopez, Carlos Lopez and Jesse Chavez, and the "government consistently argued at trial that Ruben and Carlos Almaraz co-managed and co-supervised the five individuals named in the indictment."  Considering facts nearly identical to these, we have said "[t]he indictment does not limit the class of individuals from which the 'five other persons' might be drawn."  *McSwain*, 197 F.3d at 479.  The language used in the

---

[10]  As part of his contention, he also claims the government did not argue Mr. Almaraz organized, supervised, or managed Carlos Almaraz at trial.  Our independent review of the record reveals the government did in fact make this argument.  For example, in its opening and closing statements the government described two drug transactions that included acknowledgments Mr. Almaraz set the price for the cocaine.  The government explained this was a "clear indication that Ruben Almaraz is the leader and organizer of this drug business, giving the directions" and "Ruben Almaraz is clearly in charge of this organization.  He's the head honcho, he's calling the shots, he's telling who to do what, where to be, when to be."  Calling Mr. Almaraz the "manager, organizer and leader of this continuing criminal enterprise," the government described the structure of "Almaraz Distributing."  The government explained, "there's clearly a manager and a supervisor and at least five participants."

indictment is not dispositive.

Next, Mr. Almaraz claims, "even if the government had argued at trial that [Mr.] Almaraz supervised his brother Carlos," the evidence presented at trial was insufficient for a reasonable jury to find Mr. Almaraz organized, supervised, or managed his younger brother, Carlos Almaraz. After a *de novo* review of the entire record, in the light most favorable to the government, we conclude the evidence was sufficient for the jury to determine Mr. Almaraz supervised Carlos Almaraz.

During drug transactions, Mr. Almaraz described the cocaine sold by the street-level dealers as his cocaine. He did not include Carlos Almaraz or refer to the cocaine in a way that might have given the impression it belonged to both of them. A jury could reasonably infer Mr. Almaraz was the head of the organization, above Carlos Almaraz, based on these statements. When a confidential informant spoke with Carlos Almaraz over the phone about purchasing two ounces of cocaine per week, Carlos would not agree to sell the drugs until speaking with Mr. Almaraz. Instead, he took a message for Mr. Almaraz to call the confidential informant later. When an undercover agent wanted to buy a kilo of cocaine, Carlos Almaraz called Mr. Almaraz to consult

with him before consummating the deal and Mr. Almaraz, not Carlos Almaraz, set the price. On the other hand, Mr. Almaraz did not consult with Carlos Almaraz before making decisions.

A reasonable jury could infer Mr. Almaraz supervised Carlos Almaraz based on these interactions between the two brothers. The record supports a jury finding that Mr. Almaraz organized, supervised, and managed the entire operation and Carlos Almaraz was his second in command. Therefore, we conclude the evidence was sufficient for a reasonable jury to find Mr. Almaraz supervised his brother, Carlos Almaraz.

## CONCLUSION

The government was not required to prove Mr. Almaraz organized, supervised, or managed five or more persons during the course of the three offenses of conviction and the evidence was sufficient to prove Mr. Almaraz supervised five or more persons during the course of the drug violations alleged in the indictment. Therefore, we **AFFIRM** the conviction and sentence.