**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 23 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SAMUEL RODRIGUEZ-VARGAS,

Defendant-Appellant.

No. 02-2071

(D. New Mexico)

(D.C. No. CR-01-405-JP)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges.

---

Samuel Rodriguez-Vargas appeals his conviction on charges of possessing with intent to distribute 500 grams or more of a substance or mixture containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). He argues that (1) the cocaine presented at trial was inadmissible because the police discovered the drug during a border checkpoint search of a duffle bag that violated the Fourth Amendment, (2) the evidence was insufficient to support his conviction, and (3) the failure of his trial counsel to file a motion to suppress the cocaine deprived

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

him of the effective assistance of counsel required under the Sixth Amendment. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

Samuel Rodriguez-Vargas was traveling from El Paso, Texas to Denver, Colorado as a passenger on a Golden State bus on January 12, 2001. The bus stopped at a border-control checkpoint the United States Border Patrol had established along the route and Agent Christopher Jarvis boarded the bus to check the citizenship and immigration documents of the passengers. The parties gave conflicting testimony regarding what transpired when Agent Jarvis arrived at Rodriguez-Vargas' seat.

Agent Jarvis and another agent who had assisted in the arrest offered the following testimony for the prosecution. Agent Jarvis testified that when Rodriguez-Vargas handed him a resident alien card, Rodriguez-Vargas appeared nervous and his hands were shaking and sweaty. He then noticed a duffle bag under the seat in front of Rodriguez-Vargas. Agent Jarvis asked, in Spanish, if the bag belonged to Rodriguez-Vargas, who responded, "Si." Rodriguez-Vargas then picked up the bag and put it on his lap. Agent Jarvis asked what was in the bag, and Rodriguez-Vargas told him it held clothes. When asked to open the bag, Rodriguez-Vargas first unzipped an empty pocket, then opened the main compartment and removed a pink pillow, under which was children's clothing.

Rodriguez-Vargas then placed the open bag on the empty seat between him and the aisle where Agent Jarvis was standing. Agent Jarvis interpreted this as an offer to search the bag. Reaching inside the bag, Agent Jarvis felt several small brick-like objects that he suspected were packages of narcotics. He thanked Rodriguez-Vargas and went on to check the documents of the other passengers. When Agent Jarvis finished, he signaled to another agent who was waiting outside the bus and explained his suspicions. The two agents then confronted Rodriguez-Vargas again, and this time Rodriguez-Vargas denied that he owned the duffle bag.

Rodriguez-Vargas testified in his own defense and offered a significantly different story. He denied that his hands were sweaty, and said that any shaking must have been the result of a hangover because he was not nervous at all. He also said the bag that was below his feet did not belong to him and that he had not brought any luggage with him. Rodriguez-Vargas also testified that Agent Jarvis spoke to him entirely in English, and that despite his relative difficulty in communicating in English, he told Agent Jarvis that the bag was not his. In response to what he understood to be Agent Jarvis' request, Rodriguez-Vargas placed the bag in the empty seat and opened the two compartments. Agent Jarvis then gestured that he was going to put his hands inside and did so. After Agent Jarvis had finished searching the bag he moved onto other passengers but returned

with another agent. Rodriguez-Vargas testified that Agent Jarvis again asked in English if the bag was his, and he again replied that it was not.

It is uncontroverted that prior to trial Rodriquez-Vargas did not make a motion to suppress evidence of the search under Fed. R. Crim. P. 12(b)(3).

## II.

Rodriquez-Vargas argues for the first time on appeal that the district court should have suppressed the evidence of cocaine as the result of an unconstitutional search. It is well settled in this Circuit that failure to make a motion to suppress evidence constitutes a waiver, "unless the district court, in its discretion, grants relief from the waiver for cause shown." *Fed. R. Crim. P. 12(b)(3) & (f)*; *United States v. Meraz-Peru*, 24 F.3d 1197, 1198 (10th Cir. 1994).

In *Meraz-Peru* the defendant failed to make a motion to suppress before trial, but argued on appeal that the district court erred in failing to suppress evidence that led to his conviction. 24 F.3d at 1198. This Court reviewed the district court's failure to suppress evidence for plain error, and held that because the evidence was "hardly unanimous that the encounter was unconstitutional," the district court did not commit plain error. *Id*. Therefore, where a defendant appeals a district court's failure to suppress evidence *sua sponte*, we will reverse only if the error is clear or obvious and is the only result rationally supported by

-4-

the record. *See id.* (citing *United States v. Olivier-Diaz*, 13 F.3d 1, 5 (1st Cir. 1993)).

As in *Meraz-Peru*, the facts here do not unanimously suggest that the search of the duffel bag was unconstitutional. The government presented, among other evidence, testimony that Rodriguez-Vargas consented to the search of the duffel bag. Further, Rodriguez-Vargas claimed that the bag did not even belong to him. Either of these facts alone would be enough to support a rational conclusion by the district court that the search of the bag was constitutional. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (searches conducted pursuant to consent are reasonable); *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) (consent based on non-verbal conduct); *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990) (in order to have standing, person asserting Fourth Amendment rights must have personal, subjective expectation of privacy in the subject of the search that society would recognize as objectively reasonable). Therefore, we conclude the district court's failure to suppress the cocaine did not constitute error, much less plain error.

### III.

Rodriguez-Vargas also asks us to reverse the district court's denial of his motion for acquittal, claiming the evidence presented at trial was insufficient to support a conviction. We review such challenges to the sufficiency of evidence

de novo. *United States v. Almaraz*, 306 F.3d 1031, 1040 (10th Cir. 2002). In doing so we view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. (quotation omitted). To prove possession with intent to distribute cocaine, the government had to show that (1) the defendant possessed the cocaine, (2) the defendant knew he possessed the cocaine, and (3) the defendant intended to distribute the cocaine. *United States v. Heckard*, 238 F.3d 1222, 1229 (10th Cir. 2001) (quoting *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997)).

While we acknowledge that there was conflicting testimony regarding the relevant facts, the duffel bag containing the cocaine was found under the seat directly in front of Rodriguez-Vargas, and Agent Jarvis testified that Rodriguez-Vargas initially claimed possession of the bag. Agent Jarvis also testified that when he asked to see Rodriguez-Vargas's immigration documents, Rodriguez-Vargas appeared nervous and his hands were sweaty and shaking. Further, the pillow and children's clothing suggest that Rodriguez-Vargas was attempting to conceal the drugs by hiding them beneath personal items in the duffel bag. In addition, the government presented evidence which showed that the amount of cocaine in the bag had a street value of over $80,000, an amount inconsistent with personal use.

Viewing this evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Rodriguez-Vargas knowingly possessed the cocaine with intent to distribute it. Accordingly, we affirm the district court's denial of the defendant's motion for acquittal.

IV.

Finally, Rodriguez-Vargas contends that he was deprived of the effective assistance of counsel required under the Sixth Amendment. Though in extremely rare cases we have ruled that such claims can be reviewed on direct appeal, this is not one of those cases. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (ineffective counsel claim ordinarily raised in post-conviction proceedings). As in *Meraz-Peru*, we therefore leave this issue for post-conviction proceedings, if any. *See* 24 F.3d at 1198-99.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge