**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM HARPER and
LAVONNA HARPER,

        Plaintiffs-Appellants,

v.

COLORADO STATE BOARD of
LAND COMMISSIONERS,

        Defendant-Appellee.

No. 05-1194
(D. Colorado)
(D.C. No. 98-M-673)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **HOLMES**, Circuit Judges,

For two ten-year terms (1973-83 and 1983-93), William and Lavonna

Harper leased a 220-acre parcel of land known as Crow Hill Ranch from the

Colorado State Board of Land Commissioners. At the conclusion of the second

ten-year term, the Land Board did not renew the lease, and the Harpers sought

compensation from the Land Board for the value of improvements to the ranch.

In this lawsuit filed under 42 U.S.C. § 1983, they alleged that the Land Board

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

failed to hold a hearing regarding the value of the improvements. The Harpers also claimed the Land Board, its individual members and officials, and private developers violated their rights under the lease, the Due Process and Equal Protection Clauses, federal and state antitrust laws, and state tort and contract law. The Land Board asserted a counterclaim for past rent due and for possession of the Crow Hill Ranch.

The district court granted summary judgment to the defendants on the Harpers' § 1983 due process and equal protection claims, their antitrust claims, and the majority of their state law claims. The court allowed two breach of contract claims to be tried to a jury—one involving an alleged breach of the 1983-93 lease and another involving an alleged breach of a stipulation to hold a hearing regarding the value of the improvements. The jury returned a verdict for the defendants on the first of these claims and for the Harpers on the second, awarding $271,000 in damages. After the jury trial, the court ruled for the Harpers on the Land Board's counterclaim for rent due but ordered the Harpers to deliver possession of Crow Hill Ranch to the Land Board within sixty days. Finally, the court denied the Harpers' motions for prejudgment interest and attorneys' fees.

In this appeal, the Harpers argue that the district court erred in (1) granting summary judgment to the Land Board on the § 1983 due process and equal protection claims; (2) granting summary judgment to the defendant Board on their

Sherman Act claim; (2) denying their request for prejudgment interest; (4) denying their motion for attorneys fees; and (5) denying their request for an injunction barring the Land Board's conveyance of state lands to private parties without a public auction. Finally, the Harpers contend that (6) the district court lacked jurisdiction to order the Harpers to deliver possession of the property.

We remand the case for further consideration of the Harpers' motion for attorneys' fees but affirm the district court's rulings in all other respects.

## I. BACKGROUND

Crow Hill Ranch is located in Park County, Colorado and is owned by the Land Board, the state agency established by Article IX, section 9 of the Colorado Constitution and responsible for obtaining revenue to support the public schools. See generally Brotman v. E. Lake Creek Ranch, L.L.P., 31 P.2d 886, 888 (Colo. 2001). In the Colorado Enabling Act § 7, 18 Stat. 474 (1875), Congress conveyed land to the state for support of the common schools, creating a fiduciary obligation for the state of Colorado to manage the school lands for that purpose. Id.

The Harpers first acquired the lease to the Crow Hill Ranch in 1973 through an assignment. In the fall of 1973, the Land Board leased the property to the Harpers for a ten-year period, and, in 1983, the Board renewed the lease for a second-ten year term. The Harpers demolished old buildings, built new ones, and

also installed a well. Mr. Harper managed several businesses there, including a rifle range, a gun shop, and a pawn shop.

In July 1993, the Harpers submitted an application for renewal of the lease. However, at a regular meeting in August 1993, the Land Board decided not to renew the lease. The Board issued an order directing its staff to inform the Harpers that they should begin preparations to remove the improvements from the property.

During 1993 and 1994, the Harpers asked the Land Board to hold a hearing in order to determine the value of the improvements. When the Land Board did not hold the requested hearing, the Harpers filed a state court lawsuit. They dismissed the lawsuit in 1995, pursuant to a stipulation that "the State Land Board shall schedule a hearing . . . at its earliest available date to attempt to resolve issues related to the Harpers' lease and their leasehold improvements." Aplts' App. vol. II, at 572 (Dist. Ct. Order, filed Sept. 20, 2002). Despite this stipulation, the Land Board held no hearing.

In January 1998, the Harpers filed this action in state court, naming as defendants the Land Board, its individual members and officials, and private developers whom they alleged had conspired with the Board and its members to deprive them of their property rights under the lease. The Harpers asserted: (1) a violation of the Sherman Act, 15 U.S.C. § 1, et seq., against the Land Board, its officials, and the private developers for "conspiring to convey the Crow Hill

Ranch . . . to [the private developers] without putting the property up for bid" and for seeking "in various ways to force [Mr. Harper] off the property and deprive him of his business[,]" Aplts' App. vol. I, at 46; (2) a state law antitrust claim based on the same alleged conduct; (3) a § 1983 claim alleging a violation of their Fourteenth Amendment procedural due process rights in the termination of the lease and the valuation of the improvements; (4) a § 1983 substantive due process claim based upon the same conduct; (5) a § 1983 equal protection claim; (6) a claim alleging that the defendants conspired to violate their civil rights; (7) a violation of the Colorado Records Law, Col. Rev. Stat. § 24-72-201, et seq.; (8) a claim for inverse condemnation, or, alternatively, a taking without just compensation; (9) breach of contract claims based on the terms of the lease and the 1995 stipulation in which the Land Board promised to hold a hearing on matters pertaining to the lease; (10) a claim for promissory estoppel against the Land Board, alleging that they had "reasonably relied on the express assurance . . . that [Mr. Harper] would receive the lease upon remitting the required fees[,]" Aplts' App. vol. I, at 53; (11) a claim against the Land Board for a breach of an implied covenant of good faith and fair dealing; (12) a claim against the Land Board and its officials for intentional interference with contractual rights; and (13) a claim for civil conspiracy against Land Board officials and the private developers, who allegedly agreed to force the Harpers off the Crow Hill Ranch and to sell the property to one of the private developers without public notice.

In response to the Harpers' allegations, the private developers removed the case to the federal district court. The Land Board then asserted counterclaims for unlawful detainer and rent past due. The Board contended that the Harpers had remained in possession of the Crow Hill Ranch after the lease had expired and had made no rent payments since October 1993.

In a series of orders, the district court granted summary judgment to the defendants on all but the breach of contract claims. The parties then tried those claims to a jury. The first claim alleged a breach of the 1983-93 lease, and the second one alleged a breach of the 1995 stipulation that the Land Board would hold a hearing. The jury also considered the Land Board's counterclaim for rent due.

The jury returned a verdict for the defendants on the breach of the lease claim but ruled for the Harpers on the breach of the stipulation claim, awarding them $271,000 in damages. The jury also ruled that the Harpers were not liable for past rent.

Following the trial, the district court ruled that the Land Board was entitled to possession of the property and ordered the Harpers to deliver possession in sixty days. The court denied the Harpers' motions for prejudgment interest and attorneys' fees. Finally, three weeks after the jury verdict, the Harpers filed a "Motion for Forthwith Ruling on Legal Question, and Injunction." Aplts' App. vol. III, at 737. In that motion, the Harpers challenged a 1996 amendment to the

Colorado Constitution, which authorized private sales of school land and sought an injunction barring such a sale of the Crow Hill ranch. The district court denied the motion as "procedurally inappropriate." Id. at 750.

The Harpers filed a notice of appeal in April 2005. They stated that they were not appealing the dismissal of the individual Land Board officials ("the State Defendants (Stewart, Mailander, Wilkes, Vezzani, Price, Steinhoff, and Brejcha)") or of the private developers. Id. at 754.

## II. DISCUSSION

On appeal, the Harpers challenge the district court's grant of summary judgment on their § 1983 and antitrust claims, the denial of their motions for prejudgment interest and attorneys' fees, and the denial of their post-trial motion for an injunction. They also advance a cursory argument that the district court lacked jurisdiction to order them to deliver possession of the property.

### A. Section 1983 Due Process and Equal Protection Claims

In granting summary judgment to the defendant Land Board and its officials on the Harpers' § 1983 claims for violations of procedural due process, substantive due process, and equal protection, the district court concluded that the Harpers had failed to establish that they had a property interest protected by the Fourteenth Amendment or that "similarly situated persons were treated differently." Aplts' App. vol. II, at 659. The court also held that the individual defendants were entitled to qualified immunity: "the plaintiffs have failed to show

-7-

that these defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person in their respective positions would have been aware." Id.

The Harpers now argue that they had a property interest in the leasehold and improvements of the Crow Hill ranch under several state statutes. With regard to their equal protection claim, they contend that similarly situated persons were treated differently. In particular, they maintain, other lessees who made improvements received compensation for them through public auctions. In contrast, the Land Board informed the Harpers that the improvements to the Crow Hill Ranch had no value and demanded that they immediately remove them from the property.

We need not address these arguments because, as the Land Board argues, the Harpers appealed only the § 1983 claims asserted against the Land Board itself, and those claims are deficient in a fundamental respect. Section 1983 authorizes suits against "persons," and "neither a state nor a state agency [e.g., the Land Board] is a 'person' for purposes of § 1983." See Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1234 (10th Cir. 2003) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)); see also McLaughlin v. Bd. of Trs. of State Colls. of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000) ("Having sued only the Board rather than the individual trustees, [the plaintiff] has failed to state a claim against a person covered by section 1983."). Notably, the

defendants raised this issue in their motion for summary judgment.  See Aplts'

App. vol. I, at 275 (stating that "[t]he Supreme Court has interpreted the words

'every person' to exclude the State and State agencies, such as the Land Board[,]"

and that "state officers sued in their official capacities are not 'persons' for

purposes of § 1983 actions").

In their reply brief, the Harpers argue that the Land Board has waived this

argument because it removed the case to federal court.  The Harpers maintain that

"[t]he reason a state agency (or a state itself) is generally not a 'person' for

purposes of a suit for damages under [§ 1983] is because of the 11th Amendment .

. ., which immunizes states from federal court suits for damages."  Aplts' Reply

Br. at 11 (citing Will, 491 U.S. at 58).

This argument is not persuasive.  The Supreme Court has recognized a

distinction between the immunity afforded by the Eleventh Amendment and the

limitations in the scope of § 1983 arising from the terms of the statute.  See

Arizonans for Official English v. Arizona, 520 U.S. 43, 70 (1997) (stating that

"[t]he barrier was not, as the Ninth Circuit supposed, Eleventh Amendment

immunity, which the State could waive" but that "[t]he stopper was that § 1983

creates no remedy against a State"); Gean v. Hattaway, 330 F.3d 758, 766 (6th

Cir. 2003) ("Even if Tennessee's sovereign immunity has been properly waived or

abrogated for the purposes of the federal statute the defendants allegedly violated,

a § 1983 claim against the defendants in their official capacities cannot proceed

because, by definition, those officials are not persons under the terms of § 1983."); Mason v. Univ. and Cmty. Coll. Sys. of Nev., No. 202-CV-0801-PMP PAL, 2006 WL 2708050, at *2 (D. Nev. September 19, 2006) ("Although a state may waive its Eleventh Amendment immunity by removing state law claims to federal court, a state is not a person for § 1983 purposes regardless of whether it removes such claims to federal court.").

Accordingly, because the § 1983 claims at issue in this appeal are asserted against the Land Board, an entity that is not a "person" under that statute, the district court's grant of summary judgment was proper.

### B. Antitrust Claims

In granting the motion for summary judgment filed by the Land Board and its officials on the Harpers' federal antitrust claims, the district court concluded that "[t]o establish anticompetitive activity under the Sherman Act, [15 U.S.C. § 1, et seq.], the state defendants must have '(1) participated in an agreement that (2) unreasonably restrained trade in the relevant market.'" Aplts' App. vol. II, at 580 (quoting Law v. Nat'l Collegiate Athletic Ass'n, 134 F.3d 1010, 1016 (10th Cir. 1998)). The court continued, "[[a]nticompetitive activity] may be established indirectly by proving the state defendants 'possessed the requisite market power within a defined market or indirectly by showing actual anticompetitive effects, such as control over output or price.'" Id. at 580-81 (quoting Law, 134 F.3d at 1019). Here, however the court concluded that even assuming there were private

-10-

discussions between the Land Board and third parties regarding the disposition of the Crow Hill Ranch, the Harpers had failed to offer evidence regarding the relevant market, that the Land Board had power in the relevant market, or that its actions had an anti-competitive effect.

On appeal, the Harpers argue that the district court erred in granting summary judgment on these grounds because they were not advanced by the Land Board. The Harpers also argue that they can develop evidence that the relevant market is "all members of the public who are interested in using or acquiring state trust lands, as is their right if they meet the statutory conditions for obtaining a lease." Aplts' Br. at 22. The Harpers maintain that they were "competitors in this market." Id.

Again, we are not persuaded by the Harpers' arguments. Their argument that they were not notified of their burden to present evidence of the relevant market and of the anti-competitive effects of the Land Board's alleged conduct is belied by the Land Board's summary judgment motion. There, the Land Board contended that "[t]he facts in this lawsuit do not support an antitrust claim, as they are not the type of facts that antitrust laws were intended to apply to." Aplts' App. vol. I, at 267. As part of that argument, the Land Board cited Mr. Harper's deposition testimony that he never considered buying the Crow Hill Ranch. In light of that testimony, the Land Board maintained that there was no basis for the Harpers' antitrust claims because '[t]he entirety of the . . . Claim for

-11-

Relief is premised on the defendants' alleged failure to allow Mr. Harper a legitimate chance to purchase the Crow Hill property." Id. at 270. This argument was sufficient to inform the Harpers that they were required to offer evidence that the Land Board exercised market power or that its conduct had anti-competitive effects.

Moreover, the Harpers have failed to identify such evidence in the record. A private plaintiff in a federal antitrust action must allege "an antitrust injury and must have standing to bring an antitrust claim." Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1124 (10th Cir. 2005). An "antitrust injury is an injury of the type that the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." Id. (internal quotation marks omitted). As a result, a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior. The injured party must be "a participant in the same market as the alleged malefactors." Id. (quoting R.C. Dick Geothermal Corp. v. Thermogenics, Inc., 890 F.2d 139, 148 (9th Cir. 1989) (en banc)). Here, the fact that the Land Board did not renew the Harpers' lease and considered selling the Crow Hill ranch to private developers does not establish that its conduct was anti-competitive. The Land Board may have simply concluded that the developers offered better terms than the Harpers could. Cf. Elliot, 407 F.3d at 1125 (rejecting an antitrust claim because the challenged underpayment of royalties "has no adverse effect on competition or

-12-

consumers"). Moreover, even if the Harpers had identified some anti-competitive conduct, they have failed to offer evidence that their claimed injury—the allegedly wrongful termination of their lease—"resulted from the competition-reducing aspect or effect of the [Land Board's] behavior." Id. (internal quotation marks omitted) (emphasis omitted).

We also note that the Harpers have cited only one decision in support of their antitrust theory, Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369 (10th Cir. 1979). In that case, a restaurant supplier alleged that the defendant companies had conspired to terminate a sales agreement and that the agreement "resulted in a substantial lessening of competition in the market for [a particular product], restrained trade, and conspired or attempted to monopolize the right to supply Burger King franchises." Id. at 1373. Although we deemed those allegations sufficient to state antitrust claims under the Sherman and Clayton Acts for purposes of Fed. R. Civ. P. 8 and 12, there, "the conduct complained of . . . [was] adequately specified, and the allegation of conspiracy related to that conduct." Id. at 1372. As shown above, the Harpers have not adequately shown sufficient facts to survive summary judgment. Thus, our analysis in Perington does not help the Harpers.

We therefore conclude that the district court properly granted summary judgment to the Land Board on the Harpers' federal antitrust claims.

### C. Prejudgment Interest

-13-

The Harpers also argue that the district court erred in denying their motion for prejudgment interest, under Colo. Rev. Stat. § 5-12-102(a), which provides that "[w]hen money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant." The district court denied the Harpers' motion on the ground that their damages expert, James TenBrook, "included interest in his testimony and it is therefore within the jury's award." Aplts' App. vol. III, at 749.

The Harpers now challenge the district court's ruling on two grounds. We review the court's decision for an abuse of discretion. See United States Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1255 & n. 43 (10th Cir. 1988).

The Harpers first argue that when Mr. TenBrook included interest in his calculations, he was addressing the Harpers' damages for the breach of the 1983-93 lease—a claim that the jury rejected. According to the Harpers, Mr. TenBrook did not address the question of interest pertaining to the breach of the 1995 stipulation, a claim on which the jury awarded $271,000.

Second, the Harpers point to a statement in their attorney's closing argument. There, the Harpers' attorney discussed the value of the improvements and the award of interest in the following terms:

> Other evidence of value that the jury is free to consider is, for instance . . . [a real estate broker] testified that he listed the improvements for $295,000 right at that time, and this is within a year before the lease expired . . . . And, if the jury finds that that was the value of the improvements at the time the lease expired, then we are permitted to claim prejudgment interest on that because you're computing a 1993 value. <u>We should be [able], . . . if that's what you find, to add interest on it to make it current to the present, you know, the present date</u>.

Aplt's App. vol. III, at 912-13 (emphasis added). According to the Harpers, this statement also concerned the claim for breach of the lease, not the claim for the breach of the 1995 stipulation. In any event, the Harpers add, their attorney "made it clear that interest would be a later 'add-on,' and not something the jury was expected to compute, or even permitted to award." Aplt's Br. at 18.

We discern no abuse of discretion in the district court's denial of prejudgment interest. Mr. TenBrook testified about an offer that the Harpers had received to purchase the Crow Hill Ranch. He told that jury that "the amount that the Harpers would have in the bank today if that contract had been permitted to close" was $447,394, and he explained how he arrived at that amount:

> The contract had provisions for a down payment, a payment at closing, and then a note for payment of the balance. And so, the one approach I took was to take those three different payments and assume that the note was paid out over its term and I've <u>calculated the interest</u> that was lost under that scenario.

Aplt's App. vol. III, at 829 (emphasis added).

-15-

Moreover, contrary to the Harpers' contention, there is no indication in the record that Mr. TenBrook's testimony was limited to damages on the breach of the lease claim (a claim that the jury rejected). As we understand the other claim, alleging a breach of the stipulation that the Board would hold a hearing regarding the value of the improvements, the Harpers sought damages for the Land Board's failure to pay for those improvements. Mr. TenBrook's testimony addressed the value of the improvements. Thus, the fact that he included interest in his calculations supports the district court's conclusion that prejudgment interest was included in the $271,000 award.

Finally, the fact that the Harpers' attorney referred to interest in her closing argument does not undermine the district court's decision. Her statement that "[w]e should be [able], if that's what you find, to add interest on it to make it current to the present, you know, the present date," Aplts' App. vol. III, at 913, does not clearly indicate that the award of interest was for the court rather than the jury. Indeed, the statement may be plausibly read to state that the jury had discretion to award interest. We note that the Harpers have not included in the record on appeal the entire transcript of the closing argument or the jury instructions, and so we cannot definitively determine what the Harpers' counsel intended to say about the award of interest. However, given the district court's familiarity with the litigation, we see no indication that it abused its discretion in concluding that prejudgment interest was included in the jury award.

## D. Attorneys' Fees

Next, the Harpers challenge the district court's denial of their motion for attorneys' fees. In the district court proceedings, the Harpers sought fees on two grounds: (1) as consequential damages resulting from the breach of the 1995 stipulation; and (2) under Col. Rev. Stat. § 13-17-102(2), which states that the court "shall award, by way of judgment or separate order, reasonable attorneys' fees against any attorney or party who has . . . defended a civil action, either in whole or in part, that the court determines lacked substantial justification." The statute defines "lacked substantial justification" as "substantially frivolous, substantially groundless, or substantially vexatious." Col. Rev. Stat. § 13-17-102(4). The district court denied the Harpers' motion without explanation. See Aplts' App. vol. III, at 753.

At oral argument, the Harpers' counsel withdrew the claim for attorneys' fees as consequential damages. However, counsel argued that the defense offered by the Land Board and its officials to the breach of stipulation claim lacked substantial justification.

"Generally, district courts must give an adequate explanation for their decision regarding requests for attorney's fees, otherwise we have no record on which to base our decision." Browder v. City of Moab, 427 F.3d 717, 721 (10th Cir. 2005); see also Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan, 38 F.3d 514, 519-20 (10th Cir. 1994) (reversing and remanding an

-17-

attorney fee issue because the district court "did not explain its ruling on the petition for attorneys' fees adequately"). Here, the Harpers have offered a detailed argument as to why the Land Board's defense was not substantially justified. See Aplts' Br. at 41-46; Aplts' App. vol. III, at 705-712. However, because the district court did not explain the grounds for its ruling, we are unable to adequately review it. Accordingly, we will remand that issue to the district court.

### E. Injunctive Relief

As noted above, three weeks after the jury returned its verdict, the Harpers filed a "Motion for Forthwith Ruling on Legal Question, and Injunction." Aplts' App. vol. III, at 737-739. They argued that "the new provision in the Colorado Constitution added via Amendment 16 in 1996 (and 1997 implementing statutes) authorizing exchanges of school lands is preempted by the Enabling Act, which requires any dispositions of school lands to be "only at public sale." Id. at 737. The Harpers stated that they had submitted briefs on this issue in arguing for partial summary judgment on their antitrust claims. On that ground, the Harpers sought a permanent injunction to halt the sale of the Crow Hill Ranch. The district court denied the motion as "procedurally inappropriate," offering no further explanation of its ruling. Id. at 750.

In their appellate brief, the Harpers argue that the Land Board has engaged in private sales of school lands. They assert that "[t]he Land Board's acts in

dealing exclusively with preselected parties to the end of a private conveyance of school lands, by means of exchange, affirmatively violated state law during the pertinent period before this case was filed . . . and have violated the Enabling Act throughout, to the present day." Aplts' Br. at 23.

The management of the scope of the issues in a case is committed to the district court's discretion, see Harrison v. Wahatoyas, L.L.C., 253 F.3d 552, 559 (10th Cir. 2001), and the district court did not abuse that discretion here. As the Land Board observes, the Harpers' complaint did not assert that the Land Board had engaged in illegal private sales of school lands. The Harpers now contend that they presented this issue in briefs concerning their due process and antitrust claims and that, if those claims are remanded for trial, the district court should be allowed to consider their claim for an injunction barring private sales. However, we have already concluded that the due process and antitrust claims should not be remanded. Moreover, we agree with the Land Board that the issues involving private sales raised by the Harpers in their appellate brief are beyond the scope of this litigation.

## F. Claim for Possession

Finally, in a cursory argument, the Harpers contend that the district court lacked jurisdiction to order them to deliver possession of the property. They state, without legal authority or reasoning, that "[t]he Land Board has no claim to the title and has never paid for the improvements." Aplts' Br. at 46.

-19-

Because the Harpers have made only "perfunctory and cursory reference" to this issue, without citation to authority, we need not consider it. United States v. Almaraz, 306 F.3d 1031, 1041 (10th Cir. 2002); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). However, we briefly note that this argument lacks merit. As the Land Board explains, the district court ordered the Harpers to deliver possession of the Crow Hill Ranch within sixty days of the satisfaction of the judgment by the Land Board. Despite the Harpers' claim that they have not been paid for the improvements, the record indicates that they sought damages for those improvements and that the jury awarded them $271,000.

## V. CONCLUSION

We REMAND the Harpers' motion for attorneys' fees for further consideration. In all other respects, we AFFIRM the district court's decisions.

Entered for the Court,


Robert H. Henry
United States Circuit Judge

-20-